CV 17-7251

 ORIGINAL

THE UNITED STATES DISTRICT COURT        MAUSKOPF, J.
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BARBARA RUMAIN,                          GOLD, M.J.

                              Plaintiff,

-against –                                              Index no. _____

                                                 RECEIVED
                                                 DEC 13 2017
                                                 PRO SE OFFICE

GREGORIS MOTORS, INC.                    **COMPLAINT for Fraud and**
and NISSAN NORTH AMERICA, INC.,          **Breach of Contract**
and NISSAN MOTOR ACCEPTANCE
     CORPORATION                         **PLAINTIFF DEMANDS A TRIAL**
                              Defendants. **BY JURY IN THIS ACTION**
------------------------------------------------------------X


The complaint of the plaintiff, Barbara Rumain, respectfully shows and alleges as follows:

**PARTIES**

1. Plaintiff  Barbara Rumain (hereinafter, "Rumain") currently resides at 1818 Avenue L, apt

    4D Brooklyn NY 11230.  Plaintiff formerly resided at 791 Hampton Road, Woodmere NY

    11598.

2. Defendant Gregoris Motors, Inc. is a car dealership that is a corporation organized under the

    laws of the State of New York.  The dealership and its principal executive office are located

    at 555 W Merrick Road, Valley Stream, New York, 11580-5194. Online and on its store

    front, Gregoris Motors lists itself as "Gregoris Nissan" since its inventory consists primarily

    of Nissan cars.

3. Defendant Nissan North America, Inc. is the headquarters and management office of the

    North American operations of Nissan Motor Co., Ltd., the Japanese car manufacturer.  It is

    located at One Nissan Way, Franklin, TN 37067, U.S.A.  According to the Nissan website,

"Headquartered in Franklin, Tennessee, Nissan's North American operations include automotive styling, engineering, consumer and corporate financing, sales and marketing, distribution and manufacturing for the United States, Canada, and Mexico." (From https://www.nissanusa.com/about/corporate-info)

4.  Defendant Nissan Motor Acceptance Corporation manages the financing and leasing services for Nissan products.  The NMAC Corporate Office and headquarters is located at One Nissan Way, Franklin, TN 37067.  According to the Nissan website, it "is the automotive financial services arm of Nissan North America.  Established in 1981, NMAC's primary emphasis is to provide purchase and lease financing for the complete line of Nissan and Infiniti vehicles to consumers throughout the United States. The company offers financing for the complete line of Nissan and Infiniti vehicles sold in the United States." (From https://www.nissanusa.com/about/corporate-info).

## JURISDICTION AND VENUE

5.  Jurisdiction is invoked pursuant to 28 U.S.C. 1332 on the basis of diversity.  Plaintiff is from New York.  One of the defendants, Gregoris Motors Inc., is based in New York.  Nissan North America, Inc. and Nissan Motor Acceptance Corporation (NMAC) are based in Tennessee.   Damages exceed the statutory amount of $75,000 needed to confer jurisdiction.

6.  Supplemental jurisdiction over plaintiff's state law claims is conferred by  28 U.S.C. § 1367(a)

7.  Venue is proper pursuant 28 U.S.C. 1391 because the events giving rise to the claim occurred in the Eastern District of New York.

## NATURE OF THE ACTION

8.  This action is for fraud and breach of contract.  My claims are against all the defendants.

2

## FACTUAL ALLEGATIONS

9.  Plaintiff had been speaking since November 2011 with Nick, the salesman at Gregoris Motors, about a 24-month car lease. Plaintiff and Nick spoke about a 24-month term lease only and never about any other length of term.

11. Then on December 14, 2011, plaintiff signed a Lease Agreement with salesman Nick to lease a Nissan Altima car for 24 months. At the time of the signing of this lease, plaintiff gave Nick a check for $500.  A copy of this 24-month Lease Agreement is included here as **Exhibit 1**.

12. It was agreed by plaintiff and Nick that plaintiff would come by the next day, December 15, 2011 and give him the remaining $600 down payment, for a total down payment of $1100.

13. The make, model and color of the car, the VIN number of the car, the down payment amount of $1100, the term of the lease (24 months), and the amount of the monthly payment ($209) were all on this Lease Agreement shown in **Exhibit 1**.  The lease agreement indicated that the car was a Nissan Altima Series 2.5S.  The color was Ocean Grey.  The lease agreement stated the lease was for 24 months with 1000 miles per month and a payment of $1100 down and $209 per month.  It stated there were no other upfront fees and that the VIN number was 1N4AL2AP2CC1A7057.

14. On the next day, 12/15/11, plaintiff dropped off the check for the remaining $600 as she said she would.  Nick said he would drop the car off later that day at her home.

15. Because plaintiff and Nick had established a trusting relationship (or so she thought), when he showed up with the car she was very excited to get the car and also at ease since she trusted him. Nick asked plaintiff to sign "delivery receipt papers," handing her a bunch of papers.

16. Plaintiff believes that it was then that Nick got her signature on a 39-month contract, which they had never previously discussed and whose existence she had been completely unaware of.

17. It was not until many months later, when plaintiff was making a payment online on the Nissan website (viz., Nissan Motor Acceptance Corporation), that she was shocked to find out she had a 39-month lease and not the 24-month lease which she had signed and which she had all along believed she had.

18. When plaintiff later confronted the owner of the dealership, Mr. Richard Gregoris, by phone with her objections, and suggested that he could check with the salesman that the only type of lease that had ever been discussed was a 24-month lease and that was the lease that was actually signed. Mr. Gregoris told plaintiff that Nick the salesman had since moved on to another job. He also said the signed 24-month Lease Agreement was nothing and did not trump the signed contract he had. In fact, he continued "we have never had a 24-month lease at this office, only 39-month ones."

19. This statement indicates that Gregoris Motors never had the intention of honoring the 24-month lease it gave plaintiff to sign. Based on his own words, Mr. Gregoris was planning on getting plaintiff's signature on a 39-month lease from the start.

20. Plaintiff went down to the dealership and was handed a copy of a 39-month lease. However, the numbers on the 39-month lease were inaccurate and did not reflect the exchange of money that had actually transpired. For example, this 39-month lease stated that the amount to be paid in cash at lease signing was $1202.43 when in fact the amount paid at lease signing was the $1100 stated above. In other words, this lease was a fictional

document with fictional numbers. Please see a photocopy of the relevant page of the fraudulent 39-month lease in **Exhibit 2.**

21. The dealer refused to take the car back at the end of the 24-month period and Nissan said they could not help plaintiff. Plaintiff was stuck paying the lease for many more months than she had anticipated she would be doing.

22. Plaintiff took off the car insurance on the Nissan car on 7/9/2013 and the car was sitting without license plates and without insurance in plaintiff's driveway in Woodmere for years. Plaintiff continued paying the $209 per month since she did not want a blemish on her credit report.

23. Plaintiff called Nissan Motor Acceptance Corporation numerous times to try to get assistance with this lease that she was fraudulently signed up for. Each time she called, she was told to speak to the dealership instead.

24. The car insurance policies with Liberty Mutual, included here in **Exhibit 3**, are evidence that the Nissan Altima car had no insurance on it since 07/09/2013. So, in addition to having no plates, it was uninsured, and therefore unused, for years.

25. Having to pay an unanticipated $209 per month added to plaintiff's debt and was an impediment in her getting a mortgage refinance since it raised her debt to income ratio by the extra $209 per month.

26. Plaintiff was trying to obtain a mortgage refinance with Nicholas Litterello, a Mortgage Broker with Astoria Bank.

27. Following is what Nick Litterello communicated to plaintiff:

"Current FNMA mortgage guidelines limit an applicant's total debt to 45% of gross income. If your car loan [referring to the Nissan Altima car lease] is not paid up in full, your debt ratio appears to be 45.99%, and you do not qualify. Once that car loan [Nissan Altima car lease] is paid in full (23 months left on the lease x $209.00 per month = $4807.00 total), your

debt ratio is reduced to 42.23%, which would make your financial situation acceptable according to FNMA guidelines."

28. Plaintiff was refused the refinance and Astoria Bank gave the existence of the "car loan" (this is how they referred to the Nissan lease) as the rationale for the refusal and thereby documents one aspect of the monetary damage to plaintiff as a result of the fraudulently obtained 39-month contract.

29. So the fraudulently obtained 39-month long contract impacted plaintiff's credit report and negatively affected her ability to obtain a mortgage refinance from Astoria Bank at a more favorable interest rate than the 5.625% 30-year interest rate which she had.

30. Although plaintiff was paying the $209 a month for all these extra months that she had not anticipated she would be doing, during the last year of the extra fraudulently-obtained 15-month period, she was 2-3 months behind in payments.  Shortly before the end of the 39-month period, Nissan Motor Acceptance Corporation, without notice or prior warning had a tow company come to plaintiff's residence in Woodmere to tow the car which was sitting in the driveway.

31. Upon seeing the tow company, plaintiff called Nissan Motor Acceptance Corporation to implore them that she would pay whatever money she needed to in order to avoid having the car towed.

32. The individual on the phone from NMAC transferred plaintiff to a supervisor.  The supervisor told plaintiff she could pay the amount equivalent to the two- or three-months which she was behind in payments, but the car would still be towed that day in any case.

33. Plaintiff asked the company representative why the car was being towed that particular day since she had been behind 2-3 month of payments for the last year to year-and-a-half, so why right now, shortly before the end of the 39-month period, were they towing the car?

34. Plaintiff did not receive a reply to her question.

35. The tow company proceeded to tow the car that had no license plates and no insurance on it out of plaintiff's driveway despite plaintiff's best efforts to prevent that occurrence.

36. Plaintiff now had a black mark on her credit report that she was "delinquent" and that there was an "involuntary repossession" of the car.

37. Plaintiff disputed this delinquent status in writing with the credit bureaus since plaintiff was again trying to obtain a mortgage refinance at a more favorable interest rate, this time with Teachers Federal Credit Union (TFCU). As a result of this dispute, TFCU wrote to plaintiff, in a letter dated August 24, 2016 that her mortgage application had been withdrawn by TFCU and would not be evaluated. Please see **Exhibit 4**. So this was yet another instance when the fraudulently obtained 39-month long contract impacted plaintiff's credit report and negatively affected her ability to obtain a mortgage refinance at a more favorable interest rate instead of the 5.625% 30-year interest rate which she had.

38. On June 30, 2016, plaintiff had filed a complaint against Gregoris Motors Inc. with the Office of Attorney General Eric Schneiderman, Bureau of Consumer Fraud and Protection.

39. On July 29th, 2016 plaintiff received a letter from the Office of the Attorney General stating they had received a response from Gregoris Motors. The letter together with the enclosed response appear in **Exhibit 5**.

40. What follows here is a rebuttal of Gregoris Motors' response. Mr. Gregoris states two claims in his response. The first claim is that the 24-month lease that plaintiff signed "was a non-binding agreement since it was not signed by the buyer and the seller." Plaintiff signed that 24-month lease agreement in good faith in the dealership office and money was exchanged as well: Plaintiff gave Nick, her salesman at Gregoris Motors a check for $500 at the same time she signed the agreement. If the company had no intention of honoring this lease agreement that

plaintiff was signing, why did they accept her money?  One would think also that the fact they were handing her an agreement to sign means they consented to its terms.  This was implicit in the action of them handing her the contract to sign in the first place.  If not, then why did they hand her an agreement to which they did not consent?  For them to then turn around and say they didn't sign it, and therefore it is non-binding, is a very poor argument and gives support to their behavior being willful and wanton—they intentionally tricked plaintiff.

41. The second claim in the response from Gregoris Motors is that the 39 month term "…was the only program/term available at that time from Nissan Motor Acceptance Corporation (NMAC)." NMAC is part of Nissan North America, Inc. and is provides the financing for Nissan vehicles to all dealers nationally. If that were the case, why did Gregoris Motors have plaintiff sign a 24-month lease?  Shouldn't they have informed plaintiff that the 24-monoth lease was not available?

42. They could not inform plaintiff that such a lease term was unavailable because the  24-month lease was definitely available from Nissan Motor Acceptance Corporation, and it was being widely advertised at the time on TV, online and in Nissan dealerships.

43. Moreover, Gregoris Motors' statement is false as evidenced by the following advertisements throughout the nation accessed online regarding the leases which were available from Nissan Motor Acceptance Corporation in December 2011 for a 2012 Nissan Altima:

    (1) **Exhibit 6.**  This online ad is from the website www.VehiclePriceQuotes.com.  The article is called "Nissan Deals for December 2011." It states, "This month the 2012 Nissan Altima comes with a $179 monthly payment lease on a 24-month lease term with $500 cash back."  This advertisement indicates also that Gregoris Motors was overcharging plaintiff because they were not giving her the lower monthly payment ($179 per month as opposed to $209 per month) and the $500 cash back which Nissan

Motor Corporation had authorized dealerships to do in order to move the cars out before the end of the year.

(2) **Exhibit 7**. This advertisement is from the website http://www.ridewithg.com. The ad is titled "2011-12 Nissan Lease Rates -- December 2011," which is the month in which it was published. The article states, "I also got 24-month lease rates for the Altima S sedan, which looks promising …*The highlight this month is truly the Altima S. I have NEVER seen the Altima lease this well on a 24mo lease. As a matter of fact, I don't recall any car leaning this well on a 24mo. PERIOD."* [italics mine] So not only was there a 24 month lease available from Nissan (NMAC) for the month of December 2011, it was considered an excellent rate, in addition.

(3) **Exhibit 8**. This online advertisement is from Tom Wood Nissan, with website www.Tom WoodNissan.com. It's titled "Tom Wood Nissan Year-End Roundup." It was published on December 15, 2011. It states, "Tom Wood Nissan is having the Most Wonderful Sale of the Year now through January 3rd! $179/month on the Altima, $279/month leases on the Maxima…" *So on December 15, 2011 --the very day that Mr. Gregoris claims Nissan Motor Corporation wasn't offering 24-month leases on the Altima—we see an online ad clearly contradicting his claim*: There definitely was a 24-month lese being offered for the Altima and it was for only $179 per month, which was less than the $209 per month that they had written into the 24-month contract plaintiff signed. But just getting another $30 per month for 24 months wasn't enough for Gregoris Motors. Gregoris Motors wanted to get an extra $30 per month from me not only for 24 months but for 39 months—an extra 15 months. Even though it was against plaintiff's will and without plaintiff's knowledge and they had to trick her to get it.

44. My letter to the Attorney General's Office was a complaint against Gregoris Motors only; it was

not against NMAC or Nissan North America, Inc. since these are not New York companies and the New York Attorney General's Office has no jurisdiction. Yet, following my complaint letter, the black mark on my credit report regarding the car repossession was removed from my credit report. Presumably this was done at the request of Gregoris Motors, Inc. This action bears witness to the close relationship between the dealership and Nissan and provides possible evidence for the collusion the defendant companies engaged in with regards to their fraudulent behavior.

## FIRST CAUSE OF ACTION: COMMON LAW FRAUD

45. Plaintiff repeats and realleges the allegations of paragraphs 1-44 as if set forth fully herein.

46. Defendant Gregoris Motors' and Nissan Motor Acceptance Corporation's intentional actions constituted fraud through the use of bait and switch tactics, which caused financial harm and unfortunately have been employed by other similarly situated entities in the automobile sales industry. The parent company, Nissan North America, Inc., is liable for the intentional action of these companies, which are ultimately under its control.

47. Accordingly, plaintiff is entitled to compensatory damages for her financial loss, damages for the emotional distress caused by defendants' actions, as well as punitive damages otherwise known as exemplary damages because defendants' actions were willful and wanton. Such damages will discourage defendants and other companies in the automobile sales industry from engaging in such deliberate and egregious conduct towards their customers.

## Second Cause of Action: Statutory Fraud
## New York Consolidated Laws, General Business Law – 
## GBL §349 Deceptive acts and practices unlawful

48. Plaintiff repeats and realleges the allegations of paragraphs 1-47, above, as if fully set forth herein.

49. Defendant Gregoris Motors' actions and Nissan Motor Acceptance Corporation's actions constitute fraud through the use of bait-and- switch tactics. The parent company, Nissan North America, Inc., is liable for the intentional action of these companies, which are ultimately under its control.

50. As a result, plaintiff is entitled to compensatory damages plus, under the statue, an additional one thousand dollars because defendants' actions were willful.

## Third Cause of Action:  Breach of Contract

51.  Plaintiff repeats and realleges the allegations of paragraphs 1-50, above, as if fully set forth herein.

52. Plaintiff signed a 24-month lease agreement in the office of Gregoris Motors in Valley Steam New York on December 14, 2011.  Gregoris Motors and Nissan Motor Acceptance Corporation breached this contract when they fraudulently required plaintiff to pay 15 extra months on the lease which were not part of the original contract.  The parent company, Nissan North America, Inc., is liable for the intentional action of these companies, which are ultimately under its control.

53. This breach of contract by all the defendants entitles plaintiff to damages including but not limited to compensatory damages, expectation damages, reliance damages, consequential damages, nominal damages, liquidated damages, restitution, and punitive damages given the willful and wanton conduct of defendant.

**WHEREFORE, plaintiff respectfully requests that this court enter the following judgments:**

1.    A declaration that all the defendants have engaged in bait-and-switch contract practices as well as breach of contract.

2.    An order requiring all the defendants to pay plaintiff compensatory damages for

the extra months that she had to pay for the lease due to Gregoris Motors' fraudulent activity.

3.     An order requiring all defendants to pay Rumain for damages to her credit rating and credit report caused by the repossession go the Nissan vehicle whose lease should have long ended before the repossession took place.

4.     An order requiring all the defendants to pay Rumain for the lost opportunity and lost monetary value of refinancing her house with Astoria Bank and getting a lower mortgage interest rate.  This opportunity was lost by having the extra 15 months of car lease on her credit report at the time of the application for the refinance and which resulted in her having a higher debt to income ratio than was acceptable for the refinance.

5.     An order requiring all defendants to pay Rumain for the lost opportunity, and consequently the resultant loss of the money that would have been saved, by being able to refinance her mortgage with Teachers Federal Credit Union.  This loss was because of the car lease dispute that she initiated with the credit bureaus to explain to them that the repossession was not her fault since she never intended to have the car beyond the 24-month period and the repossession occurred when she had the car for nearly 39 months.  Since she had an ongoing dispute on her record, Teachers Federal Credit Union would not evaluate her mortgage application.

6.     An order requiring all defendants to pay to Rumain prejudgment interest.

7.     An order requiring all defendants to pay Rumain's costs, out-of- pocket expenses, and reasonable attorney's fees;

8.     An order requiring all the defendants pay civil penalties for engaging in unlawful fraudulent business practices;

9.     An order for all defendants to pay punitive damages for their wanton and willful

behavior. This includes not only the bait-and-switch deceitful business practice, and the breach

of contract but also writing false statement to the Office of the Attorney General in claiming that

the 24-month lease was unavailable in December 2011 when there is more than ample evidence

demonstrating that it was available; and

10.    Such other and further relief as this honorable Court may deem just and proper.


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial

by jury in this action.

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Rule 11, by signing below, I certify to the best of my knowledge,

information and belief that this complaint: (1) is not being presented for an improper purpose,

such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is

supported by existing law or by a non-frivolous argument for extending, modifying, or reversing

existing law; (3) the factual contentions have evidentiary support or, if specifically so identified

will likely have evidentiary support after a reasonable opportunity for further investigation or

discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.


Dated: Brooklyn, New York
       December 12, 2017

Brought in Dec. 13, 2017

_____
Barbara Rumain

# EXHIBIT 1

Exhibit D

## GREGORIS MOTORS Inc.

NISSAN

SUBARU

Sales: 555 W. Merrick Road   Parts & Service: 164 Lincoln Ave.

**VALLEY STREAM, N.Y. 11580**

VEHICLE CASH
PURCHASE AGREEMENT   Sales: (516) 825-8700   (718) 291-4884   Service: (516) 872-9755   Fax No. (516) 825-7506

46788

| | | | |
|---|---|---|---|
| **BUYER** | Barbara T. Ruman | **SALESPERSON** | Nick |
| **STREET** | 791 Hampton Road | **BUSINESS PHONE** cell | 917 755-6336   **HOME PHONE** 516 295-2058 |
| **EMAIL ADDRESS** | Barbara T Ruman @ aol | **CITY** Woodmere   **STATE** NY   **ZIP** 11598 |

### THIS AGREEMENT IS NOT BINDING UNLESS SIGNED BY THE SELLER AND THE BUYER

I ORDER AND AGREE TO PURCHASE FROM YOU, ON THE TERMS CONTAINED ON BOTH SIDES OF THIS AGREEMENT, THE FOLLOWING VEHICLE:
(READ OTHER SIDE)

## PLEASE ENTER MY ORDER FOR ONE                THE VEHICLE

| YEAR 2012 | ☑ NEW   ☐ USED   ☐ DEMONSTRATOR | MAKE Nissan | MODEL Altima | SERIES 2.5S |
|---|---|---|---|---|
| TYPE 4x8 | COLOR Ocean Grey | TRIM 4 | VIN 1N4AL2AP2CC1A7057 | |

ESTIMATED DELIVERY DATE — IF THE MOTOR VEHICLE HAS NOT BEEN DELIVERED IN ACCORDANCE WITH THIS CONTRACT WITHIN 30 DAYS FOLLOWING THE ESTIMATED DELIVERY DATE, THE CONSUMER HAS THE RIGHT TO CANCEL THE CONTRACT AND TO RECEIVE A FULL REFUND, UNLESS THE DELAY IN DELIVERY IS ATTRIBUTABLE TO THE CONSUMER.   STOCK NO. (IF RESERVED) N12390

PLACE OF DELIVERY: **GREGORIS MOTORS Inc.**                **THE PRICE**

| FACTORY INSTALLED EQUIPMENT | $ | DEALER INSTALLED EQUIPMENT AND SERVICES (+) | | |
|---|---|---|---|---|

*THE OPTIONAL DEALER REGISTRATION OR TITLE APPLICATION PROCESSING FEE ($75.00 MAXIMUM) AND SPECIAL PLATE PROCESSING FEE ($3.00 MAXIMUM) ARE NOT NEW YORK STATE OR DEPARTMENT OF MOTOR VEHICLES FEES. UNLESS A LIEN IS BEING RECORDED OR THE DEALER ISSUED NUMBER PLATES, YOU MAY SUBMIT YOUR OWN APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE OR FOR A SPECIAL OR DISTINCTIVE PLATE TO ANY MOTOR VEHICLE ISSUING OFFICE.

*PRIOR USE CERTIFICATION (REQUIRED BY VEHICLE AND TRAFFIC LAW 417-A IF THE PRINCIPAL USE OF THE VEHICLE WAS A POLICE VEHICLE, TAXICAB, DRIVER EDUCATION VEHICLE OR RENTAL VEHICLE). THE PRINCIPAL PRIOR USE OF THIS VEHICLE WAS A POLICE VEHICLE ☐
TAXICAB ☐       DRIVER EDUCATION VEHICLE ☐       RENTAL VEHICLE ☐

Altima S 2012
24 months
1000 miles per month
$ 300 per month
$ 1100 down
No other NY Fault fees

### THE TRADE-IN: SUBJECT TO LIFT CHECK AND SERVICE DEPARTMENT INSPECTION 24 HOURS PRIOR TO DELIVERY.

**FINAL PAYMENT IN CASH OR CERTIFIED CHECK ONLY**

IS THE TRADE-IN VEHICLE BRANDED   ☐ YES  ☐ NO   CUSTOMER INITIALS

BRANDED VEHICLE. A BRANDED VEHICLE IS ONE THAT STATES ON THE CERTIFICATE OF TITLE ONE OF THE FOLLOWING BRANDS (RECONSTRUCTED, NON-USA-STD., EXCEEDS MECHANICAL LIMITS, NOT ACTUAL MILEAGE, WARRANTY NON-CONFORMITY OR SALVAGE) SUCH BRANDED TITLES AFFECT THE TRADE-IN PRICE OR THE ACCEPTANCE OF THE VEHICLE AS A TRADE-IN.

SOURCE ☐ NEWSPAPER ☐ YELLOW PAGES ☐ REFERENCE   **THE TRADE-IN**

| FINANCING:   YES ☐   NO ☐ | | | |
|---|---|---|---|
| AMOUNT FINANCED $ | | ORIGINATION* | $ 149.00 |
| MOS. AT _____% | | | |
| MONTHLY PAYMENTS $ | | | |
| CUST. ACCPT. SIGNATURE X | | | |

#### DESCRIPTION OF TRADE

| YEAR | MILEAGE | MAKE | MODEL | COLOR |
|---|---|---|---|---|
| | | | | |

| PLATE NO. | EXP. DATE | V.I.N. | | | |
|---|---|---|---|---|---|

LESS TRADE-IN CREDIT (−)
(BUYER SEE 1 AND 6(b) ON BACK)

| NEW PLATES 🗸   TRANSFER | **CASH PRICE** | $ |
|---|---|---|

TRADE-IN IS CLEAR OF ALL LIENS EXCEPT:   AMOUNT OWED  $

| CONTRACTUAL DISCLOSURE STATEMENT FOR USED VEHICLE ONLY | **SALES TAX** | % (+) | |
|---|---|---|---|

*THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.*

NYS REQUIRED TIRE RECYCLING FEE ($2.50 PER TIRE)

IF YOU AGREE TO ASSIST ME IN OBTAINING FINANCING FOR ANY PART OF THE PURCHASE PRICE, THIS ORDER SHALL NOT BE BINDING UPON YOU OR ME UNTIL ALL OF THE CREDIT TERMS ARE PRESENTED TO ME IN ACCORDANCE WITH REGULATION "Z" (TRUTH-IN-LENDING) AND ARE ACCEPTED BY ME. IF I DO NOT ACCEPT THE CREDIT TERMS WHEN PRESENTED, I MAY CANCEL THIS ORDER AND MY DEPOSIT WILL BE REFUNDED.

**"DEALER'S OPTIONAL FEE FOR PROCESSING APPLICATION FOR REGISTRATION AND/OR CERTIFICATE OF TITLE, AND FOR SECURING SPECIAL OR DISTINCTIVE PLATES (IF APPLICABLE). THIS IS NOT A DMV FEE *$75.00."**   (+)   $   75   00

INSPECTION FEE   (+)

#### SPECIAL NOTICE TO CONSUMER

IF, UNDER THE LAW OF THE STATE OF NEW YORK CONTROLLING THE SALE OF USED MOTOR VEHICLES, YOU SHOULD BE ENTITLED TO A REFUND IN CONNECTION WITH THIS TRANSACTION, THE VALUE OF ANY VEHICLE YOU MAY HAVE TRADED-IN (IF THE SELLER CHOOSES NOT TO RETURN IT TO YOU) SHALL NOT BE THE VALUE LISTED IN THIS DOCUMENT. INSTEAD, THE VALUE WILL BE DETERMINED BASED ON THE NATIONAL AUTO DEALERS ASSOCIATION USED CAR GUIDE-WHOLESALE VALUE OR OTHER GUIDE APPROVED BY THE COMMISSIONER OF MOTOR VEHICLES, AND ADJUSTED FOR MILEAGE, IMPROVEMENTS AND ANY MAJOR PHYSICAL OR MECHANICAL DEFECTS.

| OTHER-ITEMIZE | (+) | |
|---|---|---|
| **TOTAL CASH PRICE DELIVERED** | $ | |
| FACTORY REBATE(S) IF APPLICABLE | (−) | |
| LESS CASH DEPOSIT SUBMITTED WITH ORDER | (−) | |
| PLUS BALANCE OWING ON TRADE-IN | (+) | |
| FINAL PAYMENT IN CASH OR CERTIFIED CHECK   **CASH DUE ON DELIVERY** | $ | |

I have read the terms on the reverse side of this agreement and have received a completed copy of this agreement.

*FEE FOR PROCESSING YOUR ORDER. IT ALSO INCLUDES DATA PROCESSING EXPENSES NOT PREVIOUSLY CHARGED. IT MAY ALSO INCLUDE SOME DEALER PROFIT AND MISCELLANEOUS EXPENSE REDUCTION.

THE AMOUNT INDICATED ON THIS SALES CONTRACT OR LEASE AGREEMENT FOR REGISTRATION AND TITLE FEES IS AN ESTIMATE. IN SOME INSTANCES, IT MAY EXCEED THE ACTUAL FEES. IN SUCH INSTANCES, IF MANY VEHICLES, THE DEALER WILL AUTOMATICALLY, AND WITHIN SIXTY DAYS OF SECURING SUCH REGISTRATION ⬈

**BUYER'S SIGNATURE** Barbara Ruman      **DATE:** 12/14/11

# EXHIBIT 2

"You" and "your" refer equally to the Lessee and Co-Lessee (if any) signing this Lease. "We," "us" and "our" refer to the Dealer, to Nissan-Infiniti LT ("NILT") and any other assignee. If this Lease is assigned to the Motor Vehicle Lessor below, including any charging accessories and the battery and accessories, including any charging accessories included with the vehicle. You agree to lease this Vehicle from us under the terms on the front and back of this Lease. You understand that this is a Lease. You do not own this Vehicle, unless and until you exercise your option to purchase this Vehicle.

## 2. DESCRIPTION OF LEASED PROPERTY

| YEAR | MAKE | MODEL | BODY STYLE | VEHICLE IDENTIFICATION NUMBER (VIN) |
|------|------|-------|------------|-------------------------------------|
| 2018 | NISSAN | ALTIMA | 4DR | |

☐ New  ☐ Used   ODOMETER READING   COLOR/KEY CODE #   ☐ Charging Accessories

Primary Use ☐ Commercial ☐ Personal, Family or Household
WARNING: Important consumer protections may not apply if this Lease indicates that the Vehicle is being leased primarily for agricultural, business or commercial use.

## 3. FEDERAL CONSUMER LEASING ACT DISCLOSURE BOX

**AMOUNT DUE AT LEASE SIGNING OR DELIVERY**
(From Section 4, itemized below)
$ _____

**MONTHLY PAYMENTS**
Your first monthly payment of
$ _____ is due on signing,
followed by _____ payments of
$ _____ due on the _____ of each
month, beginning on 01/15/201_
The total of your monthly payments
is $ _____

**OTHER CHARGES*** (Not part of your monthly payment)
a) Disposition Fee (if you do not purchase the Vehicle)   $ _____
b) N/A   + $ _____
c) N/A   + $ _____
d) Total   = $ _____
*In addition, you may have to pay excess wear and use and mileage, if any.

**TOTAL OF PAYMENTS**
(The amount you will have paid by the end of the Lease)
$ _____

## 4. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

a) Capitalized Cost Reduction including any net trade-in allowance   $ _____
b) First Monthly Payment   + $ _____
c) Refundable Security Deposit   + $ _____
d) Title Fees   + $ _____
e) Registration Fees   + $ _____
f) Tax on Capitalized Cost Reduction   + $ _____
g) Sales Tax Paid in Advance   + $ _____
h) _____   + $ _____
i) _____   + $ _____
j) _____   + $ _____
k) _____   + $ _____
l) N/A   + $ _____
m) N/A   + $ _____
n) _____   + $ _____
o) Total   = $ _____

**HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID**

I) Net Trade-In Allowance   $ _____
II) Rebates and Non-Cash Credits   + $ _____
III) Amount To Be Paid in Cash   + $ _____
IV) Total   = $ _____

## 5. YOUR MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

a) **Gross Capitalized Cost.** The agreed upon value of the Vehicle ($ _____) and any items you pay over the lease term such as taxes, fees, service contracts, insurance and any outstanding prior credit or lease balance. If you want an itemization of this amount, please see Section 8   $ _____

b) **Capitalized Cost Reduction.** The amount of any net trade-in allowance, rebate, non-cash credit or cash you pay that reduces the gross capitalized cost   − _____

c) **Adjusted Capitalized Cost.** The amount used in calculating your base monthly payment   = _____

d) **Residual Value.** The value of the Vehicle at the end of the Lease used in calculating your base monthly payment   − _____

e) **Depreciation and Any Amortized Amounts.** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the lease term   = _____

f) **Rent Charge.** The amount charged in addition to the depreciation and any amortized amounts   + _____

g) **Total of Base Monthly Payments.** The depreciation and any amortized amounts plus the rent charge   = _____

h) **Lease Payments.** The number of payments in your Lease   ÷ _____

i) **Base Monthly Payment**   = _____

j) **Monthly Sales, Use or Lease Tax**   + _____

k) **Monthly Luxury Tax**   + _____

l) **Total Monthly Payment**   = $ _____

## 6. IMPORTANT TERMS

**Early Termination.** You may have to pay a substantial charge if you end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier you end the Lease, the greater this charge is likely to be. See Section 11.

**Excessive Wear and Use.** You may be charged for excessive wear based on our standards for normal use and for mileage in excess of _____ miles per year at the rate of _____ cents per mile. See Section 20. ☐ If this box is checked, this mileage includes _____ miles over the term of the Lease purchased at _____ cents per mile, which is included in your monthly payment. There

will be no refund for unused miles, including any additional miles purchased by you.

**Purchase Option at End of Lease Term.** You have an option to purchase the Vehicle at the end of the lease term for $ _____ and a Purchase Option Fee of **$300.00**. See Section 15.

**Other Important Terms.** This Lease contains additional information on early termination, purchase options and maintenance responsibilities, warranties, late and default charges, insurance, and any security interest, if applicable.

# EXHIBIT 3



**Liberty Mutual**
**INSURANCE**

# Policy Declarations

## A summary of your auto insurance coverage

Reason for your new declarations page: Endorsement 08

- Add Other Than Collision/Collision to Vehicle 2
- Add Full Glass Coverage to Vehicle 2
- Add Towing And Labor to Vehicle 2
- Increase Other Than Collision Deductible Veh 1
- Increase Collision Deductible to Vehicle 1
- Add Anti-Theft Devices to Vehicle 2

Effective date of this change: 08/02/2012



### INSURANCE INFORMATION

| | |
|---|---|
| Named Insured: | Aron Schneiderman<br>Barbara T Rumain |
| Policy Number: | AO2-228-842753-00 1 6 |
| Policy Period: | 11/12/2011-11/12/2012 12:01 AM standard time at the address of the Named Insured as stated below. |
| Mailing Address: | 791 Hampton Rd<br>Woodmere NY 11598-2518 |
| Affinity Affiliation: | Alumni Association of The City College of New York |

### Vehicles Covered by Your Policy

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2012 | NISSAN | ALTMA S | 1N4AL2AP2CC187057 |
| 2 | 2012 | CHRYSLER | TOWN & COU | 2C4RC1BG1CR414378 |

### Coverage Details

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. **Where no premium is shown, you have not purchased the indicated coverage for that vehicle.**

### Coverage Information

Premium Adjustment from 08/02/2012 to 11/12/2012

| | VEH 1 | VEH 2 |
|---|---|---|
| | $72CR | $118 |

Total Adjustment: $46.00

| Total Annual Policy Premium : | $3,265.00 |
|---|---|

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE | |
|---|---|---|---|---|
| | | | VEH 1 | VEH 2 |
| **A. Liability** | | | $737 | $737 |
| Bodily Injury | $ 100,000 | Each Person | Yes | Yes |
| | $ 300,000 | Each Accident | | |
| Property Damage | $ 100,000 | Each Accident | | |
| **B. Medical Payments** | | | | |
| | $ 1,000 | Each Person | Waive | Waive |




**ACTION REQUIRED:**

Please review and keep for your records.

**QUESTIONS ABOUT YOUR POLICY?**

**By Phone**
1-212-398-2480
1-888-821-2205

**Liberty Mutual Office**
114 W 47th St Fl 21
New York NY 10036

**Visit us online**
LibertyMutual.com

**MANAGE YOUR ACCOUNT ONLINE**

Sign up for eService
LibertyMutual.com/eService

**To report a claim**
**By Phone**
1-800-2CLAIMS
(1-800-225-2467)

**Online**
LibertyMutual.com/claims

**THIS IS NOT YOUR AUTO INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.**

Exhibit 3



**Liberty Mutual**
INSURANCE

# Policy Declarations
## A summary of your auto insurance coverage

Reason for your new declarations page:  Policy Change 02

- Eliminate Multi-Car Veh 2          • Eliminate Vehicle 1

Effective date of this change: 07/09/2013



### INSURANCE INFORMATION

| | |
|---|---|
| Named Insured: | Aron Schneiderman<br>Barbara T Rumain |
| Policy Number: | AO2-228-842753-00 2  6 |
| Policy Period: | 11/12/2012-11/12/2013 12:01 AM<br>standard time at the address of the<br>Named Insured as stated below. |
| Mailing Address: | 791 Hampton Rd<br>Woodmere NY 11598-2518 |
| Affinity Affiliation: | Alumni Association of The City<br>College of New York |

### Vehicles Covered by Your Policy

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 2 | 2012 | CHRYSLER | TOWN & COU | 2C4RC1BG1CR414378 |

### Coverage Details

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. **Where no premium is shown, you have not purchased the indicated coverage for that vehicle.**

### Coverage Information

Premium Adjustment from 07/09/2013 to 11/12/2013

| | VEH 1 | VEH 2 |
|---|---|---|
| | $655CR | $102 |

Total Adjustment: $553.00CR

| | |
|---|---|
| **Total Annual Policy Premium :** | **$1,555.00** |
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE |
|---|---|---|---|
| | | | VEH 2 |
| **A. Liability** | | | $990 |
| Bodily Injury | $ 100,000 | Each Person | Yes |
| | $ 300,000 | Each Accident | |
| Property Damage | $ 100,000 | Each Accident | |
| **B. Medical Payments** | | | |
| | $ 1,000 | Each Person | $1 |
| **C. Supplementary Uninsured/Underinsured Motorists (SUM)** | | | |
| Uninsured Motorists | $ 100,000 | Each Person | $69 |
| Bodily Injury | $ 300,000 | Each Accident | |





**ACTION REQUIRED:**

Please **review and keep** for your records.

**QUESTIONS ABOUT YOUR POLICY?**
By Phone
1-212-398-2480
1-888-821-2205

**Liberty Mutual Office**
114 W 47th St Fl 21
New York NY 10036

Visit us online
LibertyMutual.com

**MANAGE YOUR ACCOUNT ONLINE**
Sign up for eService
LibertyMutual.com/eService

**To report a claim**
By Phone
1-800-2CLAIMS
(1-800-225-2467)

**Online**
LibertyMutual.com/claims

**THIS IS NOT YOUR AUTO INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.**

Policy Declarations



**Liberty Mutual.**
INSURANCE

# Policy Declarations
## A summary of your auto insurance coverage

Thank you for renewing with us.
Your declarations are effective as of 11/12/2013.



## INSURANCE INFORMATION

| | |
|---|---|
| Named Insured: | Aron Schneiderman<br>Barbara T Rumain |
| Policy Number: | AO2-228-842753-00 3  6 |
| Policy Period: | 11/12/2013-11/12/2014 12:01 AM<br>standard time at the address of the<br>Named Insured as stated below. |
| Mailing Address: | 791 Hampton Rd<br>Woodmere NY 11598-2518 |
| Affinity Affiliation: | Alumni Association of The City<br>College of New York |

## Vehicles Covered by Your Policy

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2012 | CHRYSLER | TOWN & COU | 2C4RC1BG1CR414378 |

## Coverage Details

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. **Where no premium is shown, you have not purchased the indicated coverage for that vehicle.**

## Coverage Information

| | |
|---|---|
| **Total Annual Policy Premium :** | **$1,711.00** |
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE |
|---|---|---|---|
| | | | VEH 1 |
| **A. Liability** | | | $1,142 |
| Bodily Injury | $ 100,000 | Each Person | Yes |
| | $ 300,000 | Each Accident | |
| Property Damage | $ 100,000 | Each Accident | |
| **B. Medical Payments** | | | |
| | $ 1,000 | Each Person | $1 |
| **C. Supplementary Uninsured/Underinsured Motorists (SUM)** | | | |
| Uninsured Motorists | $ 100,000 | Each Person | $73 |
| Bodily Injury | $ 300,000 | Each Accident | |
| **Personal Injury Protection (PIP)** | | | |
| Personal Injury Protection (PIP)<br>Mandatory Basic Economic<br>Loss | $50,000 | | $485 |
| No Deductible | | | |
| Optional Basic Economic Loss | N/A | | |



## ACTION REQUIRED:

Please **review and keep for your records.**



## QUESTIONS ABOUT YOUR POLICY?

**By Phone**
1-212-398-2480
1-888-821-2205

**Liberty Mutual Office**
114 W 47th St Fl 21
New York NY 10036

**Visit us online**
LibertyMutual.com

## MANAGE YOUR ACCOUNT ONLINE

Sign up for eService
LibertyMutual.com/eService

**To report a claim**
**By Phone**
1-800-2CLAIMS
(1-800-225-2467)

**Online**
LibertyMutual.com/claims

**THIS IS NOT YOUR AUTO INSURANCE BILL. YOU WILL BE BILLED SEPARATELY.**

AUTO 3079 10 09

*page 3 of 4*
~~Page 1 of 3~~



# Policy Declarations
## A summary of your auto insurance coverage

Thank you for renewing with us.
Your declarations are effective as of 11/12/2014.

**Liberty Mutual**
INSURANCE

### INSURANCE INFORMATION

| | |
|---|---|
| **Named Insured:** | Aron Schneiderman<br>Barbara T Rumain |
| **Policy Number:** | AO2-228-842753-00 4 6 |
| **Policy Period:** | 11/12/2014-11/12/2015 12:01 AM<br>standard time at the address of the<br>Named Insured as stated below. |
| **Mailing Address:** | 791 Hampton Rd<br>Woodmere NY 11598-2518 |
| **Affinity Affiliation:** | Alumni Association of The City<br>College of New York |

### Vehicles Covered by Your Policy

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2012 | CHRYSLER | TOWN & COU | 2C4RC1BG1CR414378 |

### Coverage Details

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased the indicated coverage for that vehicle.

### Coverage Information

| **Total Annual Policy Premium :** | **$1,856.00** |
|---|---|
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE |
|---|---|---|---|
| | | | VEH 1 |
| **A. Liability** | | | $1,283 |
| Bodily Injury | $ 100,000 | Each Person | Yes |
| | $ 300,000 | Each Accident | |
| Property Damage | $ 100,000 | Each Accident | |
| **B. Medical Payments** | | | |
| | $ 1,000 | Each Person | $1 |
| **C. Supplementary Uninsured/Underinsured Motorists (SUM)** | | | |
| Uninsured Motorists | $ 100,000 | Each Person | $77 |
| Bodily Injury | $ 300,000 | Each Accident | |
| **Personal Injury Protection (PIP)** | | | |
| Personal Injury Protection (PIP)<br>Mandatory Basic Economic Loss<br>No Deductible | $50,000 | | $485 |
| Optional Basic Economic Loss | N/A | | |



### ACTION REQUIRED:

Please review and keep for your records.



### QUESTIONS ABOUT YOUR POLICY?

**By Phone**
1-212-398-2480
1-888-821-2205

**Liberty Mutual Office**
114 W 47th St Fl 21
New York NY 10036

**Visit us online**
LibertyMutual.com

### GO PAPERLESS

Manage your policy 24/7
on eService
LibertyMutual.com/register

### To report a claim

**By Phone**
1-800-2CLAIMS
(1-800-225-2467)

**Online**
LibertyMutual.com/claims

**THIS IS NOT YOUR
AUTO INSURANCE BILL.
YOU WILL BE BILLED
SEPARATELY.**

EXHIBIT 4



**Teachers Federal Credit Union**

**TFCU**

*The Educated Choice For Everyone*

102 Motor Parkway • Hauppauge, NY 11788
Tel: 631-698-7000 • Fax: 631-698-7004
www.teachersfcu.org

August 24, 2016

Barbara Rumain
791 Hampton Road
Woodmere, NY 11598

Re: Credit Dispute

Dear Ms. Rumain:

As per our conversation your mortgage application has been withdrawn due to the credit dispute you put on the credit report.

When you have resolved your dispute, and it has been removed from the credit report you may re-apply.

You must be a member of Teachers Federal Credit Union to receive any services.

Sincerely,

Susan Brostowski
Origination Supervisor
Mortgage Department

# EXHIBIT 5



### STATE OF NEW YORK
### OFFICE OF THE ATTORNEY GENERAL

ERIC T. SCHNEIDERMAN
Attorney General

Division of Regional Offices
Nassau Regional Office

July 29, 2016

Barbara Rumain
791 Hampton Road
Woodmere, NY 11598

Our File Number: **2016-1297918**
Company: Gregoris Motors

Dear Barbara Rumain:

I enclose a copy of the response we have received from the company regarding your complaint, for your review and records.

I hope this information is helpful.

Very truly yours,

Wendy Boulding
Bureau of Consumer Frauds
And Protection

Enclosure

page 1 of 2



**ATTORNEY GENERAL ERIC T. SCHNEIDERMAN**
State of New York
Office of the Attorney General
Bureau of Consumer Frauds and Protection
200 Old Country Road, Suite 240
Mineola, N.Y. 11501

STATE OF NEW YORK
ATTORNEY GENERAL OFFICE

JUL 29 2016

RECEIVED
NASSAU REGIONAL OFFICE

**File Number 2016-1297918**          **Staff: Adam Levin**

# RESPONSE FORM

Name of consumer: **Barbara Rumain**

Legal name of company: _GREGORIS  MOTORS  INC._

Executive office address: _____

If a corporation, names of president and general manager: _RICHARD  GREGORIS_

If a partnership, names of partners: _____

If a sole proprietorship, name of owner: _____

Name, address and telephone number of person to contact for additional information: _____
_555 W. MERRICK RD  VALLEY STREAM, N.Y. 11580_

**RESPONSE TO COMPLAINT:**
(Enclose copies of documents in support of your position.  Use additional pages if necessary.)

_THE  PURCHASE  AGREEMENT  (NOT  LEASE  AGREEMENT )  WHICH  WAS  SIGNED  ON  12/14/11  WAS  A  NON-BINDING  AGREEMENT  SINCE  IT  WAS  NOT  SIGNED  BY  THE  BUYER  AND  SELLER.  ALTHOUGH  a  24  MO.  LEASE  MIGHT  HAVE  BEEN  DISCUSSED,  THE  ACTUAL  LEASE  AGREEMENT  (SEE  ENCLOSED)  WAS  SIGNED  ON  12/15/11  THAT  MOTOR  VEHICLE  LEASE  WAS  FOR  A  39  MO.  TERM  WHICH  WAS  THE  ONLY  program/term  AVAILABLE  AT  THAT  TIME  FROM  NISSAN  MOTOR  ACCEPTANCE  CORP. (NMA_

In order to resolve this matter, we offer to:
_UNFORTUNATELY  THERE  IS  NOTHING  GREGORIS  MOTORS  CAN  DO.  MRS.  ROMAIN  AND  GREGORIS  MOTORS  SIGNED  FOR  A  39  MONTH  LEASE  WITH  NMAC  AND  NOTHING  FURTHER  CAN  BE  DONE._

I understand that any false statements made on this form are punishable as a Class A Misdemeanor under §175.30 and/or §210.45 of the Penal Law.

Name: _RICHARD  GREGORIS_          Title: _V.P._
Signature: _____          Date: _7-25-16_

A COPY OF THIS REPLY WILL BE SENT TO THE CONSUMER

_page 2 of 2_

# EXHIBIT 6



Home

## VehiclePriceQuotes.com

New Cars | Used Cars | Rebates | Incentives | Auto Loans | Le

### Nissan Deals for December 2011

Written By PhilGreene. In Auto Loans, Incentives, Lease Deals, Loan Deals, New Cars, Rebates

The 2012 Nissan Altima comes with a 0% car loan deal for 60 months plus $500 cash back during December. The 2012 Nissan Versa, 2012 Nissan Murano and 2012 Nissan Sentra come with a 0% interest rate for 36 months plus $500 cash back. The 2012 Nissan Quest has a 0% interest rate loan deal available during December plus $800 cash back. Nissan is offering a 0% interest rate incentive for 60 months during December on the 2012 Rogue, 2012 Nissan Xterra, 2012 Pathfinder, 2012 Armada and 2012 Frontier. The 2012 Nissan Sentra comes with $1,500 cash back this month. The 2012 Nissan Altima has a $2,250 cash back deal. The 2012 Nissan Maxima and 2012 Nissan Murano have a $3,000 cash back deal during December. The 2012 Nissan Quest has a $3,050 cash back rebate available this month. The 2012 Nissan Rogue comes with a $1,525 cash back rebate.

The 2012 Nissan Sentra has a $169 lease deal during December with a $1,999 initial payment and a 39 month term.

You can lease the 2012 Nissan Versa for $179 per month with a 39 month lease and a $1,999 initial payment.

This month the 2012 Nissan Altima comes with a $179 monthly payment lease on a 24 month lease term with $500 cash back.

You can lease the 2012 Nissan Maxima with a $279 monthly payment deal for 39 months with $2,999 due at signing.

The 2012 Nissan Rogue comes with a $209 monthly lease payment for 39 months with a $2,999 initial payment.

Click here to get an internet price quote from a local Nissan dealer.

## Like This Post ?

# EXHIBIT 7



# Tom Wood Nissan Year-End Roundup!

**Thursday, 15 December, 2011** | Mariah Smith

Tom Wood Nissan is ending 2011 with a bang! Check out all the year-end specials available, along with some other neat holiday-related things we're doing. From lease specials to gift certificates to cookie recipes- we've got them all! Read on to find out all the details!



Tom Wood Nissan is having the Most Wonderful Sale of the Year now through January 3rd! $179/month leases on the Altima, $279/month leases on the Maxima, and $209/month leases on the Rogue. Visit Tom Wood Nissan for details.



In addition to great cars and fantastic deals, Tom Wood Automotive has numerous other goodies available this holiday seas



# EXHIBIT 8

http://www.ridewithg.com/2011/12/2011-12-nissan-lease-rates-december-2011/

# 2011-12 Nissan Lease Rates – December 2011

Published 5 years ago by G



There's been a slight drop in MF for the Maxima, Rogue and Murano. I also got 24-month lease rates for the Altima S sedan, which looks promising. I also got the numbers for the Pathfinder, which doesn't horrible but I'm not certain it will be a great lease. The highlight this month is truly the Altima S. I have NEVER seen the Altima lease this well on a 24mo lease. As a matter of fact, I don't recall any car leasing this well on a 24mo. PERIOD. There is also 0% financing for up to 60 month, making this both a good lease AND a good buy. Looks like we found this month's Round-Up winner.

## SAMPLE

Here is a sample calculation based on TrueCar's Southern California sale price and do not include local taxes. Please note that your dealer calculations may vary due to local fees/taxes.

2012 NISSAN ALTIMA SEDAN S CVT (*24-month lease)
MSRP – $23,330
Sale Price – $19,369 ($500 lease bonus and $500 loyalty lease cash applied)
Monthly – $176+ tax
RWG Rating – 122.7

**Support my site by getting your "no obligation" quotes from:**
**TrueCar.com**

## LEASE RATES
**2012 NISSAN MAXIMA S**
**36 Month – Residual 59% of MSRP – .00126 Base Rate**