UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

BARBARA RUMAIN,

                Plaintiff,

       -against-

GREGORIS MOTORS, INC., et al.,

                Defendants.

-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
17-CV-7251 (DG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff Barbara Rumain, *pro se*, initiated this action on December 13, 2017, alleging, *inter alia*, claims for fraud and breach of contract under New York law against Defendants Gregoris Motors, Inc., Nissan North America, Inc., Nissan Motor Acceptance Corporation, and Nissan-Infinity LT (collectively, the "Nissan Defendants").[1] (*See* Third Am. Compl. ("TAC"), ECF No. 68; Compl., ECF No. 1.) Currently before the Court is Plaintiff's motion for leave to file a fourth amended complaint, which the Honorable Diane Gujarati referred to the undersigned magistrate judge. (*See* Mot. to Amend, ECF No. 101; Nov. 21, 2023 ECF Order Referring Mot.) For the reasons set forth below, the Court respectfully recommends denying leave to amend.

---

[1] Nissan-Infiniti LT was added as a Defendant in the second and third amended complaints. (*See* Second Am. Compl., ECF No. 24 (hereinafter "SAC"); TAC, ECF No. 68.)

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Factual Background

Plaintiff's claims derive from a car lease transaction. Plaintiff alleges that in late 2011, she inquired about a 24-month car lease, entered into a 24-month car lease, and then later discovered that the lease term was actually 39 months. (TAC, ECF No. 68, ¶¶ 1–2, 11.) Plaintiff states that she was not permitted to return the car after 24 months without paying early termination fees. (*Id.* ¶ 17.) Plaintiff further states that, because of the lease, she was unable to refinance her home mortgage. (*Id.* ¶¶ 23–26.) On February 6, 2015, about one month before the end of the lease term, the car was repossessed because Plaintiff was two to three months behind on the lease payments. (*Id.* ¶ 31.) In 2016, Plaintiff alleges that her TransUnion credit report noted an outstanding balance on the lease of over $4,000 and reflected a "charged off" loan status. (*Id.* ¶ 46.) Plaintiff alleges that two collection agencies pursued the debt on Defendant Nissan Motor Acceptance Corporation's behalf. (*Id.* ¶ 55.)

### II.  Procedural History

#### A.  Pleadings

As noted above, Plaintiff filed this action on December 13, 2017. (Compl., ECF No. 1.) The initially-named Defendants indicated their intent to move to dismiss. (Mots. for Pre-Mot. Conference, ECF Nos. 4, 7.) Plaintiff filed a first amended complaint on April 6, 2018. (Am. Compl., ECF No. 10.) At an initial conference held by Magistrate Judge Steven M. Gold, Judge Gold indicated he would "recommend dismissal for lack of subject matter jurisdiction unless any party files a letter or memorandum of law by May 9 indicating why it would not be proper to do so." (Min. Entry, ECF No. 14.) On May 7, 2018, Plaintiff filed a motion to amend the complaint, which was granted on June 11, 2018. (Mot. to Amend, ECF No. 16; Order, ECF No. 23.) Plaintiff's second

amended complaint was filed on June 25, 2018. (Second Am. Compl., ECF No. 24 ("SAC").) On September 27, 2018, Defendants Nissan Motor Acceptance Corporation, Nissan North America, Inc., and Nissan-Infiniti LT, Inc. moved to dismiss the SAC. (Mot. to Dismiss, ECF No. 34.) Defendant Gregoris Motors, Inc. ("Gregoris") filed a motion to dismiss on October 26, 2018. (Mot. to Dismiss, ECF No. 38.) On September 28, 2021, the Honorable Roslynn R. Mauskopf granted Defendants' motions to dismiss in part, dismissing the majority of Plaintiff's claims under the Fair Credit Reporting Act and her claim alleging breach of contract. *See Rumain v. Gregoris Motors, Inc.*, No. 17-CV-7251 (RRM) (TAM), 2021 WL 9553573, at *12 (E.D.N.Y. Sept. 28, 2021), ECF No. 54. Defendants answered the SAC on October 29, 2021, and November 2, 2021. (Answers, ECF Nos. 55, 56.)

To put the discussion of Plaintiff's proposed fourth amended complaint into context, the Court summarizes the claims alleged in the currently operative complaint. Following Judge Mauskopf's ruling on the motions to dismiss the SAC, two claims remain. As against the Nissan Defendants, Judge Mauskopf held that Plaintiff adequately alleged a claim under 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act, which statute "outlines an information furnisher's duties following a dispute regarding the completeness or accuracy of a consumer's credit report." *Rumain*, 2021 WL 9553573, at *7. As to this claim, Plaintiff alleges that she reported to TransUnion that the derogatory information on her credit report from Nissan was incorrect, but that Nissan "acted willfully or negligently" in failing to correct the information. *Id.* at *8. (*See* SAC, ECF No. 24, ¶ 56 (alleging that Nissan-Infinity LT was asked to investigate the information that was being provided and "instead of taking the opportunity to remove it and right the wrong that was committed, they chose to keep it on").)

As against Defendant Gregoris, Judge Mauskopf held that Plaintiff's allegations

stated a fraud in the execution claim regarding the lease, explaining as follows:

> In this case, Rumain has adequately pled a claim of fraud in the execution against Gregoris. "Fraud in the execution occurs where there is a 'misrepresentation as to the character or essential terms of a proposed contract,' and a party signs without knowing or having a 'reasonable opportunity to know of its character or essential terms.'" *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 31–32 (2d Cir. 1997) (quoting Restatement (Second) of Contracts § 163 comment a (1981)). Such fraud may occur if there is a "substitution of a document of the same kind where the new document introduced important terms that were materially different from those to which the party had agreed." *Id.* at 32. For example, such fraud may occur where "A and B reach an understanding that they will execute a written contract containing terms on which they have agreed[, the contract] is properly prepared and is read by B, but A substitutes a writing containing essential terms that are different from those agreed upon and thereby induces B to sign it in the belief that it is the one he has read." Restatement (Second) of Contracts § 163, illustration 2. Under such circumstances, "B's apparent manifestation of assent is not effective" to bind him. *Id.* Thus, "fraud in the execution, if established, renders a purported agreement void *ab initio*." *Hetchkop*, 116 F.3d at 32.

> The allegations in the SAC contain detailed allegations which closely mirror the illustration provided in the Restatement (Second) of Contracts § 163. The SAC alleges that Gregoris' salesman, Nick, reached an understanding regarding the terms of the 24-month lease. Nick prepared a writing entitled a "Vehicle Cash Purchase Agreement," that memorialized the terms of their agreement. Rumain read and signed, mistakenly believing that it was a binding agreement. The next day, however, Nick came to her house with the car and handed her a "bunch" of papers, which included a contract containing essential terms which differed from those to which Rumain had previously agreed. He induced Rumain to sign it by misrepresenting that the papers were just "delivery receipt papers." (SAC at 2d ¶ 9.) Nick clearly intended to deceive her; the owner of the dealership subsequently claimed that Gregoris did not offer 24-month leases so Nick could not have offered her the lease they had negotiated. Nick's ruse worked; Rumain alleges that she signed them without even noticing that she was signing a 39-month lease agreement.

> To be sure, the SAC does not specifically allege fraud in the execution and does not allege any facts in the third cause of action itself. However, the first paragraph of third cause of action "repeats and realleges the allegations" of all prior paragraphs, (SAC at ¶ 60), and those paragraphs contain the facts set forth in the preceding paragraph. In light of Rumain's *pro se* status, the Court finds that the SAC states a plausible claim for fraud in the execution against Gregoris and alleges that claim with sufficient

> particularity. In contrast, the SAC does not allege fraud on the part of Nissan.

*Rumain*, 2021 WL 9553573, at *10–11 (alteration in original). In addition, Judge Mauskopf dismissed Plaintiff's breach of contract claim, which was based on the alleged 24-month lease agreement, finding that the contract was void under the New York statute of frauds because it had never been signed by Defendants. *Id.* at *11.

Plaintiff filed a third amended complaint on August 31, 2022, in which she reiterated her § 1681s-2(b) claim against Nissan and her common law fraud claim against Gregoris. (TAC, ECF No. 68, ¶¶ 56–60.) She also sought to add a third claim, alleging a violation of the Consumer Protection Act of 2010. (*Id.* ¶¶ 61–70.) Following another pre-motion conference letter anticipating a motion to dismiss, Judge Mauskopf dismissed the third cause of action, Defendant Gregoris filed an answer on September 14, 2022, and the Nissan Defendants filed an answer on December 7, 2022. (Mot. for Pre-Mot. Conference, ECF No. 69; Oct. 17, 2022 ECF Order; Answers, ECF Nos. 70, 77.)

On September 19, 2023, the court held a status conference and discussed "Plaintiff's interest in amending the complaint to include her claim that her credit report was pulled for an impermissible purpose." (Sept. 19, 2023 ECF Min. Entry & Order.) The Court set a deadline for Plaintiff to initiate motion practice to amend the complaint, and indicated that, "[a]fter that date, no amendments to the pleadings [would] be permitted." (*Id.*) After granting one short extension to that deadline, on November 3, 2023, Plaintiff filed a motion to amend the complaint, followed by a corrected proposed fourth amended complaint. (Oct. 17, 2023 ECF Order; Mot. to Amend, ECF No. 101; Corrected Proposed 4th Am. Compl., ECF No. 103 (hereinafter "Proposed Am. Compl.").) Defendants filed responses in opposition on November 17, 2023, and Plaintiff filed replies on December 1, 2023. (Gregoris Resp. in Opp'n, ECF No.

105; Nissan Resp. in Opp'n, ECF No. 106; Reply to Def. Gregoris, ECF No. 109; Reply to Def. Nissan, ECF No. 111.)

### B. Discovery, Settlement, and Mediation

The Court first ordered a discovery schedule on June 28, 2022, over four years after the action was initiated. (June 28, 2022 ECF Order.) The Court held a first pre-settlement status conference on August 30, 2022, and directed Plaintiff to make a settlement demand "as soon as possible" with a damages calculation to facilitate settlement discussions. (Aug. 30, 2022 ECF Min. Entry & Order.) The Court held a status conference on January 12, 2023, where it reiterated its direction to Plaintiff to provide a settlement demand and damages calculation and extended the discovery schedule, setting the close of fact discovery as March 3, 2023. (Jan. 12, 2023 ECF Min. Entry & Order.) On May 4, 2023, the Court held a status conference to discuss outstanding discovery and directed the parties to certify the close of fact discovery by May 18, 2023. (May 4, 2023 ECF Min. Entry & Order.) Following multiple status reports and status conferences discussing outstanding discovery issues, the Court found that discovery was closed on November 7, 2023. (*See* Parties' Joint Status Rep. on Fact Disc., ECF No. 93; July 26, 2023 ECF Min. Entry & Order; Joint Status Rep., ECF No. 96; Joint Status Rep., ECF No. 97; Sept. 19, 2023 ECF Min. Entry & Order; Nov. 7, 2023 ECF Min. Entry & Order.)

On November 7, 2023, the Court referred the case to mediation. (Nov. 7, 2023 ECF Min. Entry & Order.) On April 17, 2024, the Nissan Defendants filed a status report indicating that mediation was not successful. (Status Rep., ECF No. 117.)

### III. Proposed Amendments

Plaintiffs' proposed amendments seek to enlarge the complaint, excluding exhibits, from 25 pages to 42 pages. (*Compare* TAC, ECF No. 68, *with* Proposed Am.

Compl., ECF No. 103, at ECF p. 3.) Defendants oppose Plaintiff's motion for reasons of futility and prejudice. (*See* Gregoris Resp. in Opp'n, ECF No. 105; Nissan Resp. in Opp'n, ECF No. 106.) Plaintiff proposes adding numerous factual allegations as well as ten new causes of action. A summary of Plaintiff's proposed additions is as follows.

## A. Additional Allegations of Fraud Against Defendant Gregoris

In addition to Plaintiff's existing claim for fraud in the execution against Defendant Gregoris, Plaintiff proposes adding three new fraud claims. In the proposed amended complaint, Plaintiff spends three and a half pages describing her "five claims of fraud" against Defendant Gregoris and a "[r]elated [f]raud" by Mr. Gregoris as follows: (1) that she was given a 39-month lease despite signing paperwork for a 24-month lease; (2) that Mr. Gregoris "knowingly made a false statement" to the New York State Office of the Attorney General ("OAG") that there were no 24-month leases available on the date she acquired her lease, which was contradicted by a stipulation provided by the Nissan Defendants; (3) statements by Mr. Gregoris that his dealership has never offered 24-month leases, despite having paperwork available for a 24-month lease; (4) an allegation that Defendant Gregoris affixed a forged signature to paperwork for a 39-month lease; (5) alleged forgery of a credit application presented to Plaintiff at her deposition; and (6) an allegation that Mr. Gregoris testified untruthfully that he "decided to sell" his Nissan dealership when court filings indicate that Nissan North America terminated his franchise. (Proposed Am. Compl., ECF No. 103, at ECF pp. 7–10.) Later in the proposed amended complaint, Plaintiff writes over two pages of factual allegations regarding the credit application presented to her at her deposition. (*Id.* at ECF pp. 31–33.)

More specifically, Plaintiff proposes that (1) Mr. Gregoris's statement to the OAG be added as a third cause of action; (2) the presentation to Plaintiff of allegedly forged

documents during her deposition be added as a fourth cause of action; and (3) the alleged forgery of her signature on one of the 39-month lease applications be added as a fifth cause of action. (*Id.* at ECF pp. 35–37.) The Court notes at the outset that Mr. Gregoris is not a named Defendant in this case.

## B. Alleged Violations of the New York State Motor Vehicle Retail Leasing Act

For the first time in the proposed amended complaint, Plaintiff alleges that all Defendants violated the New York State Motor Vehicle Retail Leasing Act ("MVRLA"). Plaintiff adds three pages of factual allegations and three claims related to these alleged violations. Plaintiff claims that the 39-month lease violates the MVRLA in the following four ways: (1) violation of the provision that upon early termination, a lessor may not charge the lessee for excess mileage; (2) violation of the provision requiring that a lessor provide an itemized bill detailing excess wear and damage by a licensed appraiser as well as notice of the lessee's right to a second inspection; (3) violation of the provision granting the lessee the right to select an appraiser to assess excess wear and damage upon the scheduled termination of a lease; and (4) violation of the provision prohibiting a lessor from charging a lessee for excess wear and use upon early termination unless the lessor makes actual repairs to the vehicle. (*Id.* at ECF pp. 14–15.) Notably, Plaintiff does not describe whether and how she was injured by any of these violations, only that the terms of the lease agreement facially violate the statutory provisions.

Plaintiff's proposed claims that stem from alleged violations of the MVRLA are as follows: (1) a sixth cause of action against Defendant Gregoris for signing the 39-month lease and "implementing an unlawful lease"; (2) a seventh cause of action against Defendant Gregoris for attempting to enforce the "illegal" 39-month lease; and (3) an eighth cause of action against all Defendants for requiring lessees to agree to allegedly unlawful terms. (*Id.* at ECF pp. 37–39.) She also seeks a declaratory judgment

that the lease was void *ab initio* because it violated the MVRLA, as discussed further below. (Reply to Def. Gregoris, ECF No. 109, at 13; Mot. For Declaratory J., ECF No. 112.)

### C. Allegations Related to Vehicle Repossession

While Plaintiff included factual allegations related to the repossession of the vehicle in February 2015 in the TAC, the proposed amended complaint includes additional factual allegations and two new proposed causes of action. Plaintiff states in the proposed amended complaint that since filing the previous complaint, she has learned of "cure" letters she received indicating the vehicle may be repossessed. (Proposed Am. Compl., ECF No. 103, at ECF p. 21.) Plaintiff states that she received two "cure" letters, and that in between receipt of the letters, she brought her account up to date before becoming delinquent again. (*Id.*) Plaintiff alleges that, because a lessee may only "cure" a delinquency once per contract, the second letter represents a "deceptive business practice." (*Id.* at ECF p. 22 (emphasis omitted).) Plaintiff further alleges that because she called Defendant Nissan Motor Acceptance Corporation ("NMAC") to object to the vehicle being repossessed and called the police to prevent the car from being towed, the repossession constituted a breach of the peace. (*Id.* at ECF pp. 23–24.)

As to these allegations, Plaintiff proposes three claims: (1) a ninth cause of action, alleging that the repossession was illegal because the 39-month lease contract was void *ab initio*; (2) a tenth cause of action, alleging that the repossession was illegal because it breached the peace; and (3) a twelfth cause of action, alleging that the second "cure" letter was a deceptive business practice under New York law. (*Id.* at ECF pp. 39–42.)

### D. Allegations of Double Billing

Plaintiff's proposed amended complaint also includes new factual allegations and a new proposed cause of action based on a claim of double billing. Plaintiff states

that account information from Defendant NMAC's database reflects an instance of double billing in June 2013 without a corresponding reversal. (*Id.* at ECF p. 20.) Plaintiff admits she is unable to corroborate whether or not she was actually double billed because the transaction occurred in 2013 and her bank was unable to provide statements from that time period. (*Id.* at ECF p. 21.) Plaintiff proposes an eleventh cause of action against Defendant NMAC related to the alleged double billing. (*Id.* at ECF p. 40.)

## DISCUSSION

### I. Legal Standards

"[W]hen read together," Rules 15 and 16 of the Federal Rules of Civil Procedure "set forth three standards for amending pleadings that depend on when the amendment is sought." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021). "At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission." *Id.* "After that period ends — either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A) — the plaintiff must move the court for leave to amend, but the court should grant such leave 'freely . . . when justice so requires' pursuant to Rule 15(a)(2)." *Id.* (quoting Fed. R. Civ. P. 15(a)(2)). "This is a liberal and permissive standard," *id.* (quotation marks omitted), under which leave should be denied only "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quotation marks omitted) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Courts may, however, deny a motion to amend the complaint where the amendments would be futile, such as where "the proposed new allegations would not state a viable claim, and thus the new claim would not withstand a motion to dismiss

under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Barnett v. Diaz*, No. 19-CV-415 (NSR), 2019 WL 6340960, at *2 (S.D.N.Y. Nov. 26, 2019) (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)).

## II. Analysis

### A. Futility

All Defendants oppose Plaintiff's motion to amend on the basis that Plaintiff's new allegations are futile. (*See* Gregoris Resp. in Opp'n, ECF No. 105; Nissan Resp. in Opp'n, ECF No. 106.) A futility argument challenges "[t]he adequacy of a proposed amended complaint to state a claim," which is "judged by the same standards as those governing the adequacy of a filed pleading." *Anderson News, LLC v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). In other words, "[l]eave to amend may properly be denied if . . . the proposed new pleading fails to state a claim on which relief can be granted." *Id.* For the reasons discussed below, the Court recommends finding that Plaintiff's proposed causes of actions related to fraud, the MVRLA, vehicle repossession, and double billing are futile.

### 1. *Allegations of Fraud*

Plaintiff's proposed amendments seek to add three additional fraud claims against Defendant Gregoris. As set forth above, Judge Mauskopf already found that Plaintiff adequately pleaded a fraud in the execution claim against Defendant Gregoris. At this juncture, the factual allegations and claims Plaintiff seeks to include in the fourth amended complaint may well be relevant to her existing fraud cause of action. However, much like Plaintiff's effort to include additional, redundant claims in the SAC, each instance of an alleged falsehood or purportedly fraudulent statement does not warrant a standalone fraud claim. *See Rumain*, 2021 WL 9553573, at *12 (observing that three additional causes of action in the SAC "allege damage suffered as a result of

the [Fair Credit Reporting Act] violations and state-law torts described above" and finding that "these three claims need not be considered as standalone causes of action[]").

Under New York law, the elements of fraud are "a representation of material fact, falsity, scienter, reliance[,] and injury." *Vermeer Owners, Inc. v. Guterman*, 78 N.Y.2d 1114, 1116 (1991). Where a plaintiff's proposed cause of action does not identify how an alleged fraud satisfies all of these elements, it fails to state a claim upon which relief could be granted. *See Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 223–24 (N.D.N.Y. 2009) (denying a motion to amend seeking leave to add a second claim for fraud for failure to establish the elements of fraud).

Plaintiff's proposed third cause of action relates to the allegedly false statement by Mr. Gregoris to the OAG in 2016 that there were no 24-month leases available from Defendant NMAC on December 15, 2011. (Proposed Am. Compl., ECF No. 103, at ECF p. 35.) Again, the Court notes that Mr. Gregoris is a not a defendant in this action. But even if he were or if Mr. Gregoris's allegations were attributable to Defendant Gregoris (which is unclear on the basis of the present record), Plaintiff alleges that Mr. Gregoris made this statement on July 25, 2016, five years after she took out the car lease at issue in this case, and more than a year after the vehicle had been repossessed.[2] (*Id.*) Given that the lease agreement in this case is dated in 2011, Plaintiff has not and cannot

---

[2] The proposed amended complaint does not allege with specificity *when* Plaintiff learned of Mr. Gregoris's statement to the Attorney General's Office. In her reply, Plaintiff suggests that she received a letter from the Attorney General's Office on July 29, 2016, that enclosed Gregoris Motors' response to their inquiry. (Reply to Def. Gregoris, ECF No. 109, at 8.) As discussed, however, even if the Court were to attribute Mr. Gregoris's statement to Defendant Gregoris Motors, Plaintiff's allegations are deficient to establish a standalone fraud claim.

establish how she could have relied on Mr. Gregoris's statement to OAG in the execution of the lease agreement or otherwise, or how she suffered cognizable injury as a result of any purported reliance on his statements to the Attorney General's Office.

In an effort to salvage this claim, Plaintiff argues that her reliance on the allegedly false statement is demonstrated by her delay in commencing this action, and she claims that this delay "damaged" her. (Reply to Def. Gregoris, ECF No. 109, at 7, 8.) Even assuming that Plaintiff's "reliance" on the allegedly false statement caused her to delay filing a lawsuit, she has not articulated any specific facts from which the Court may reasonably infer a cognizable injury. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff ultimately did file a lawsuit and, should she prevail, an award of prejudgment interest would redress her claimed injuries notwithstanding the alleged "delay" in filing her lawsuit. (*See* Proposed Am. Compl., ECF No. 103, at ECF p. 44 (requesting prejudgment interest).) For these reasons, Plaintiff's proposed third cause of action does not establish a fraud claim upon which relief could be granted.

Plaintiff's proposed fourth cause of action relates to Defendant Gregoris's presenting Plaintiff with an allegedly forged credit agreement during her deposition in this case. (*Id.* at ECF p. 36.) Plaintiff's proposed fifth cause of action relates to the claim that there are two versions of the 39-month lease agreement with different signatures, which she claims indicates at least one forged signature. (*Id.* at ECF pp. 36–37.) Taking Plaintiff's factual allegations as true, as the Court must, these allegations do not state a claim for fraud independent of the fraud in the execution claim that is already alleged in this case. If anything, taking her claims as true, the existence of these purportedly forged documents, of which Plaintiff alleges that she became aware during discovery in

this case, may be evidence that supports her fraud in the execution claim. Beyond that, however, Plaintiff has not stated a standalone claim for common law fraud based on these documents. Given her representation that she became aware of these alleged forgeries at her deposition in December 2022, she has not and cannot establish that she relied on them to enter into the lease in 2011. She also has not articulated any cognizable damages or injury flowing from the presentation of these alleged forgeries beyond the injuries alleged in connection with her pending fraud claim.[3] Accordingly, Plaintiff's proposed fourth and fifth causes of action do not establish standalone fraud claims upon which relief could be granted.

2. *Allegations Related to the MVRLA*

As discussed above, Plaintiff proposes adding three claims based on alleged violations of the MVRLA.[4] Specifically, Plaintiff posits that the lease was illegal and thus

---

[3] Plaintiff argues that her cause of action alleges a "fraud on the court" as opposed to common law fraud related to the allegedly forged credit agreement. (Reply to Def. Gregoris, ECF No. 109, at 8–10.) She cites case law for the proposition that forging a signature is fraud on the court. (*Id.* at 9 (citing *Flava Works Inc. v. Momient*, No. 11-C-6306, 2013 WL 1629428, at *2 (N.D. Ill. Apr. 16, 2013)). While putting a forged document before the Court would certainly violate the rules of professional responsibility, "there is no private right of action under New York law to enforce attorney disciplinary rules." *Jin-Jo v. Wash. Mut. Inc.*, No. 08-CV-230A, 2009 WL 10681448, at *1 (W.D.N.Y. Mar. 30, 2009) (denying a motion to amend a complaint to add attorneys who allegedly violated disciplinary rules); *see also Shapiro v. McNeill*, 92 N.Y.2d 91, 97 (1998) ("[A]n ethical violation will not, in and of itself, create a duty that gives rise to a cause of action that would otherwise not exist at law.").

[4] Plaintiff states that several provisions of her lease violate requirements of the MVRLA; but the Court questions whether Plaintiff has standing as to any MVRLA claims as she has not alleged sufficient facts from which to infer *injury* as a result of these lease provisions. All of the identified provisions relate to the determination of charges for excess mileage or excess wear upon lease termination. (Proposed Am. Comp., ECF No. 103, at ECF pp. 14–15.) But nowhere does Plaintiff allege specific facts indicating that she was ever charged for excess mileage or

void *ab initio* "because it contains 4 provisions that violate" the MVRLA. (*Id.* ¶ 18.) Defendants argue that all of the claims based on the MVRLA are time barred. (Gregoris Resp. in Opp'n, ECF No. 105, at 3; Nissan Resp. in Opp'n, ECF No. 106, at 2.) In reply, Plaintiff states that she is *not* bringing an action under the MVRLA. (Reply to Def. Gregoris, ECF No. 109, at 12.) The Court notes, however, that in the proposed amended complaint, each of Plaintiff's causes of actions related to the MVRLA are styled as "violation[s] . . . of the New York State Motor Vehicle Retail Leasing Act." (Proposed Am. Compl., ECF No. 103, at ECF pp. 37–38 (capitalization modified).) In her reply, Plaintiff "make[s] a motion to request a declaratory judgment from the Court that the 39-month lease was *void ab initio* since it violated NYS Law." (Reply to Def. Gregoris, ECF No. 109, at 13; *see also* Mot. for Declaratory J., ECF No. 112 (reiterating her request for a declaratory judgment as to whether the 39-month lease was void *ab initio*).)

As a general rule, "a party is not entitled to amend its complaint through statements made in motion papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (citing *IIT v. Cornfeld*, 619 F.2d 909, 914 n.6 (2d Cir. 1994), *abrogated on other grounds by Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247 (2010)). Notwithstanding that important principle, the Court analyzes Plaintiff's claims liberally due to her *pro se*

---

excess wear. "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) (emphasis in original). Without a concrete injury fairly traceable to the alleged statutory violation, a plaintiff lacks Article III standing. *See, e.g., Sevilla v. House of Salads One LLC*, No. 20-CV-6072 (PKC) (CLP), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022). Where a plaintiff's "proposed allegations fail to aver actual . . . injuries sufficient to establish constitutional standing, . . . such amendments would be futile." *Ciccotelli v. Deutsche Bank AG*, No. 15-CV-105 (WKS), 2016 WL 2588169, at *7 (D. Vt. May 4, 2016); *see also Siino v. City of New York*, No. 14-CV-7217 (MKB) (LB), 2020 WL 3807451, at *19 (E.D.N.Y. Feb. 27, 2020) ("Here, although the Court accepts all of plaintiff's well-pleaded allegations as true and draws all reasonable inferences in plaintiff's favor, amendment would nonetheless be futile as plaintiff lacks constitutional standing to bring the . . . claims she proposes to add to the case."), *report and recommendation adopted*, 2020 WL 1861865 (E.D.N.Y. Apr. 14, 2020).

status. For the reasons set forth below, whether analyzed as claims or requests for relief, the Court finds that Plaintiff's claims and requests based on the MVRLA, including the request for a declaratory judgment based on the purported MVRLA violations (whether as a claim or a standalone motion), are futile as time barred and without merit.

As a threshold matter, the Court notes that Plaintiff's assertion in the proposed amended complaint that the contract was void *ab initio* is a legal conclusion, and it is well established that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (modifications and quotation marks omitted). In addition, to the extent Plaintiff's claims are based on the MVRLA, they are time barred for the reasons set forth below. Her request for a declaratory judgment is likewise time barred and also without merit.

a. The MVRLA's Limitations Provision

The MVRLA's limitations provision states that "[a]n action shall not be brought under this article more than four years after the occurrence of the act, method or practice which is the subject of the action or more than one year after the last payment in a transaction involving the method, act or practice which is the subject of the action, whichever is later." N.Y. Pers. Prop. Law § 346(10). This limitation is best understood as a statute of repose that forecloses any action brought more than four years after the date of the act, method, or practice alleged to have violated the MVRLA, or the last payment resulting from a transaction that involved such method, act, or practice.

"Although '[s]tatutes of repose and statutes of limitations are often confused[,] . . . they are [nonetheless] distinct' and serve distinct purposes." *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 106 (2d Cir. 2013) (hereinafter *Police & Fire Ret. Sys.*) (quoting *Ma v. Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.*, 597 F.3d 84, 88 n.4 (2d Cir. 2010)) (alterations in *Police & Fire Ret. Sys.*). Statutes of limitations create "'a time limit for suing in a civil case, based on the date when the claim accrued.'" *CTS Corp. v. Waldburger*, 573 U.S. 1, 8 (2014) (quoting *Statute of Limitations*, Black's Law Dictionary (9th ed. 2009)). "In a personal-injury or property-damage action, for example, more often than not this will be 'when the injury occurred or was discovered.'" *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) (quoting *CTS Corp.*, 573 U.S. at 8).

"A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant." *CTS Corp.*, 573 U.S. at 8; *see also Statute of Repose*, Black's Law Dictionary (11th ed. 2019) (defining statute of repose as "[a] statute barring any suit that is brought after a specified time since the defendant acted . . . , even if this period ends before the plaintiff has suffered a resulting injury"). The New York Court of Appeals has observed that:

> Statutes of repose are theoretically and functionally distinct from typical time limitations. . . . Unlike the usual limitation provision, which does not begin to run until a cause of action accrues (*see, e.g.,* CPLR 203[a]; CPLR 214), a statute of repose begins to run when the specified event or events takes place, regardless of whether a potential claim has accrued or, indeed, whether any injury has occurred.

*Tanges v. Heidelberg N. Am., Inc.*, 93 N.Y.2d 48, 55 (1999). The Court of Appeals has further observed that "[t]he extra theoretical consequence of statutes of repose practically blocks causes of action before they even accrue." *Id.* at 56. Accordingly, New York recognized that such statutes "exhibit a substantive texture, nature and consequence that distinguishes them from ordinary limitation provisions. In the vernacular of conflict of laws analysis, statutes of repose envelop both the right and the remedy." *Id.*

"The distinction between statutes of limitation and statutes of repose is important because the former are generally subject to equitable tolling," including the discovery rule, "while the latter are not." *United States ex rel. Wood v. Allergan, Inc.*, No. 19-CV-4029 (JMF), 2020 WL 3073293, at *2 (S.D.N.Y. June 10, 2020) (citing *Pasternack v. Shrader*, 863 F.3d 162, 176 (2d Cir. 2017)); *see also id.* ("[T]he discovery rule . . . provides that accrual is delayed until the plaintiff has discovered his cause of action . . . ." (quotation marks omitted)). Accordingly, a statute of repose "carries significant practical consequences" for plaintiffs; in some cases, it "'may bar a claim *even before the plaintiff suffers injury*, leaving her without any remedy.'" *Police & Fire Ret. Sys.*, 721 F.3d at 106 (quoting *Fed. Housing Fin. Agency v. UBS Ams. Inc.*, 712 F.3d 136, 140 (2d Cir. 2013) (emphasis added in *Police & Fire Ret. Sys.*)). This is because "in contrast to statutes of limitations, statutes of repose 'create[] a substantive right in those protected to be free from liability after a legislatively-determined period of time.'" *Id.* (quoting *Amoco Prod. Co. v. Newton Sheep Co.*, 85 F.3d 1464, 1472 (10th Cir. 1996)).

As set forth above, the MVRLA expressly precludes suit more than four years after an act alleged to have violated the statute. This formulation is analogous to the language in the Securities Act determined to be a statute of repose in *Police and Fire Retirement System*, where the statute provided, in pertinent part: "In no event shall any such action be brought to enforce a liability [created under specific subsections of the Securities Act] more than three years after the [underlying] security was bona fide offered to the public, or [under another section of the Securities Act] more than three years after [its] sale." 15 U.S.C. § 77m; *see Police & Fire Ret. Sys.*, 721 F.3d at 107 (discussing and quoting 15 U.S.C. § 77m). Both the MVRLA and the Securities Act provide that no "action" may be brought after a specified time period, and in both statutes, the time period is triggered by action or inaction by a putative defendant.

Under the MVRLA, the time period begins to run the last time a lender allegedly violates the law's requirements or receives a payment made in connection with an arguably violative lease; in the Securities Act, the time period begins with the offering or sale of a security. Neither statute provides for any exceptions or suggests that the limitation on suit will be triggered by *discovery* of a violation.[5]

With the MVRLA, the New York legislature created a regulatory scheme and specific statutory causes of action, but also placed a strict limit on the time period within which such actions must be initiated under the law. Accordingly, the Court finds that the time to bring an MVRLA claim is tied to a defendant's allegedly unlawful acts or the timing of the conclusion of payments made on an allegedly violative lease agreement. As applied to this case, the four-year clock began to run, at the very latest, when the repossession of Plaintiff's car occurred in 2015. As a consequence, to the extent Plaintiff is attempting to bring claims under the MVRLA, those claims were barred as of February 6, 2019, four years from the date of the repossession of Plaintiff's vehicle. (TAC, ECF No. 68, ¶ 31.) Plaintiff filed the proposed fourth amended complaint more than four years after the limitations period had run. (*See* Mot. to Amend, ECF No. 101; Proposed Am. Compl., ECF No. 103.) For all of these reasons, the Court finds that leave to file Plaintiff's proposed sixth, seventh, and eighth causes of action should be

---

[5] This language contrasts sharply with the Securities Act's limitation on other actions, brought under different subsections. As to those, § 77m provides as follows:

> No action shall be maintained to enforce any liability created under section 77k or 77l(a)(2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77l(a)(1) of this title, unless brought within one year after the violation upon which it is based.

15 U.S.C. § 77m.

denied as futile because the claims are time barred under the MVRLA's statute of repose.

b. The Declaratory Judgment Request

As to Plaintiff's request for a declaratory judgment based on the MVRLA allegations, her claim is based on an *ipse dixit* assertion in the proposed amended complaint that the contract is void *ab initio*, a legal conclusion that the Court need not and does not credit. Rather, under New York law, penalties for violating the MVRLA are set forth by statute; penalties may include, among other things, recovery of "actual damages from the lessor" or "a civil penalty of one hundred dollars" — *not* contract avoidance. N.Y. Pers. Prop. Law § 346(1), (4); *cf. Trinity Auto. Servs. Ltd. v Lyons*, 11 Misc. 3d 1057(A) (N.Y. Dist. Ct. 2006) (declining to find that violations of the MVRLA result in the lessor's forfeiture of "contractual rights to charge, receive, or collect any charge for excessive wear and damage to the vehicle from the lessee" and referencing the availability of a civil penalty, actual damages, and attorney's fees).

Plaintiff's request for a declaratory judgment based on the alleged MVRLA violations is a transparent attempt to do an end run around the applicable statute of repose.[6] In addition, even if Plaintiff were permitted to amend her complaint to

_____

[6] In the context of the MVRLA's statute of repose, the Court finds that, styled as a claim, a declaratory judgment cause of action would also be time barred. As the Second Circuit has observed, "New York law requires its courts to look to the substance of a claim to determine which statute of limitations applies." *See Town of Orangetown v. Gorsuch*, 718 F.2d 29, 42 (2d Cir. 1983). "If this examination reveals that a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern." *Id.; see Tanges*, 93 N.Y.2d at 55 (observing that "[u]nlike statutes of limitation,

incorporate the alleged violations of the MVRLA, or to include a declaratory judgment cause of action, the requested remedy of a declaratory judgment that the contract is void *ab initio* does not follow based on the statutory scheme and the penalties prescribed therein. In summary, the proposed amendments and requested declaratory relief fail "to state a claim on which relief can be granted." *Anderson News, LLC*, 680 F.3d at 185. Consequently, the Court recommends denying Plaintiff's motion for leave to amend as to claims related to the MVRLA or for a declaratory judgment based on alleged MVRLA violations. The Court also respectfully recommends denial of Plaintiff's related motion specifically requesting a declaratory judgment on these grounds. (*See* Mot. for Declaratory J., ECF No. 112.)

   3.   *Allegations Related to Vehicle Repossession*

Plaintiff's proposed amendments add two causes of action claiming that the repossession of the vehicle was illegal because (1) the 39-month lease was void *ab initio* and (2) the repossession breached the peace. Plaintiff also proposes adding a cause of action that the second "cure" letter sent prior to the vehicle repossession represents a deceptive practice. Citing the Legal Aid Society's website in support of her ninth proposed cause of action, Plaintiff states that because the contract was void, the Nissan Defendants were required to get a court order prior to repossession. Whether this cause

---

that are designed to prevent plaintiffs from sleeping on their legal rights to the detriment of a defendant . . . [t]he repose period serves as an absolute barrier that prevents a plaintiff's right of action"). Here, Plaintiff attempts to recast her claims that rely on the MVRLA as contract claims, and she further contends that there is no statute of limitations when a contract is void *ab initio*. The main case Plaintiff relies upon in support of this proposition is not persuasive, however, as it concerned an ongoing lease agreement, not a contractual relationship that had come to a conclusion. (*See* Reply to Def. Nissan, ECF No. 111, at 2.) In any event, this argument is untenable — given "[t]he extra theoretical consequence of statutes of repose" and their "substantive texture, nature and consequence," the Court finds that any of Plaintiff's claims that rely upon the substantive provisions of the MVRLA would be governed by its four-year statute of repose. *Tanges*, 93 N.Y.2d at 56.

of action could be grounded in the Fair Debt Collection Practices Act ("FDCPA") or state contract law, the claim would be time barred. An action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d); *see also Rotkiske v. Klemm*, 589 U.S. 8. (2019). The statute of limitations for contract actions in New York is six years. N.Y. C.P.L.R. § 213(2). As both the inception of the contract and the repossession were well over six years ago, Plaintiff's proposed ninth cause of action is time barred.

Plaintiff's tenth proposed cause of action claims that the vehicle repossession was illegal because it breached the peace. Specifically, Plaintiff claims that the repossession breached the peace because she objected to the tow. (Proposed Am. Compl., ECF No. 103, at ECF p. 24.) However, "the taking of a vehicle on default from a public location over the oral objection of the owner, however strenuous, is not a breach of the peace unless accompanied by factors indicating that the activities of the repossession agent are of a kind likely to cause violence, or public distress and/or consternation." *Gill v. Bd. of Nat'l Credit Union Admin. for Sikh Fed. Credit Union*, No. 93-CV-1597, 2018 WL 5045755, at *10 (E.D.N.Y. Oct. 16, 2018); *see also Garcia v. Dezba Asset Recovery, Inc.*, 665 F. Supp. 3d 390, 408–09 (S.D.N.Y. 2023) ("This Court, like courts before it, has not found any New York precedent that would illuminate how the breach of peace standard articulated in [*People v. Most*, 171 N.Y. 423 (1902)] would apply in the context of verbal objections to repossessions. In the absence of guidance from New York courts, this Court notes that in recent years, courts in the Second Circuit have begun to coalesce around the holding in *Gill*."); *id.* at 407, 409 (finding that where a plaintiff "confronted the person moving his vehicle" and objected to the repossession, the plaintiff "ha[d] not pled facts that approach those sufficient to constitute a breach of the peace as defined by the majority

of courts in the Second Circuit"). Here, too, Plaintiff's proposed amended complaint does not allege facts establishing a breach of the peace.

Plaintiff's twelfth proposed cause of action claims that the second "cure" letter sent by the Nissan Defendants represents a deceptive business practice. (Proposed Am. Compl., ECF No. 103, at ECF pp. 40–41.) Plaintiff grounds her claim in New York's prohibition against "[d]eceptive acts or practices in the conduct of any business, trade, or commerce." N.Y. Gen. Bus. Law § 349. However, the New York Court of Appeals has foreclosed using this statute to litigate "[p]rivate contract disputes unique to the parties"; rather, a plaintiff must allege "conduct that is consumer oriented" that has "a broad impact on consumers at large." *N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 320 (1995) (alteration in original) (quotation marks omitted); *see also Zawahir v. Berkshire Life Ins. Co.*, 804 N.Y.S. 2d 405, 407 (App. Div. 2d Dep't 2005) (holding that a plaintiff failed to state a cause of action where "[the] action simply involves a private contract dispute . . . in contrast to the consumer-oriented, deceptive conduct aimed at the public at large that General Business Law § 349 is designed to address"). Plaintiff does not allege sufficient facts to plead a broad impact on consumers at large; she complains of conduct that is unique to her. Furthermore, the claim is time barred because under New York law, any claim "to enforce a penalty . . . created by statute and given wholly or partly to any person who will prosecute" — as is General Business Law section 349 — must be brought within one year. N.Y. C.P.L.R. § 215(4); *see also* N.Y. Gen. Bus. Law § 349(h) (providing a right of action to both the attorney general and "any person who has been injured by reason of any violation of this section"). Accordingly, Plaintiff's claim of deceptive business practices is insufficiently pleaded and also time barred.

For all of these reasons, Plaintiff's proposed amendments seeking to add three new claims related to the vehicle repossession would be futile.

4. *Allegations of Double Billing*

Plaintiff's eleventh cause of action states as follows: "NMAC's double[ ]billing practice resulted in my making payments I was unaware of and the car may not have qualified for repossession considering money I was unaware of was taken out of my bank account and there is no evidence in the transaction history that it was ever put back[.]" (Proposed Am. Compl., ECF No. 103, at ECF p. 40 (capitalization modified).) Plaintiff claims that an entry on June 18, 2013, indicates that "two payments were taken and that a reversal should be posted to my bank account tomorrow." (*Id.* ¶ 40 (capitalization modified).) Plaintiff further alleges that, based on the deposition testimony of a Nissan representative, the payment history of her lease does not "show the double billing. It shows just one payment. Nor does it show a reversal." (*Id.* ¶ 42.) Based on these allegations, Plaintiff contends that she was double billed and that, because of the double billing, she was not sufficiently behind such that the car should have been repossessed. (*Id.* ¶ 43.) Whether analyzed as a contract claim or deceptive business practice, Plaintiff's double-billing claim is time barred; it also does not state a claim under General Business Law section 349 since it does not allege deceptive conduct aimed at the public. *See* N.Y. C.P.L.R. § 213(2) (providing a six-year statute of limitations for contract actions); § 215(4) (providing a one-year statue of limitations for claims under General Business Law section 349); *Zawahir*, 804 N.Y.S. 2d at 407. Accordingly, Plaintiff's proposed amendment seeking to add a cause of action for double billing would be futile.

**B. Undue Delay & Prejudice**

As set forth above, the Court entered a case management schedule on June 28, 2022; that schedule set a deadline to join new parties or amend the pleadings as of right by August 31, 2022. (June 28, 2022 ECF Order.) The current motion to amend thus falls

within the period during which "the court should grant . . . leave [to amend] freely . . . when justice so requires pursuant to Rule 15(a)(2)." *Sacerdote*, 9 F.4th at 115 (quotation marks omitted). Leave should be denied only "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA*, 758 F.3d at 505 (quotation marks omitted).

In evaluating prejudice, courts consider "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726–27 (2d Cir. 2010) ("Amendment may be prejudicial when, among other things, it would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." (quotation marks omitted)).

All Defendants argue that they would be prejudiced if Plaintiff's proposed amended complaint were to be filed. (Gregoris Resp. in Opp'n, ECF No. 105, at 3; Nissan Resp. in Opp'n, ECF No. 106, at 2.) The Nissan Defendants note that fact discovery on the sole claim remaining against them has been concluded, and that the Nissan Defendants "have not pursued discovery concerning the allegations" related to the MVRLA. (Nissan Resp. in Opp'n, ECF No. 106, at 2.)

For the reasons discussed below, the Court finds that, if her claims were not futile (which they are), the filing of Plaintiff's new claims would almost certainly require the Court to reopen discovery, which could result in additional undue delay in this case, which has already been pending for over six years. This would further delay this already fraught case and cause undue prejudice to Defendants. In particular,

Plaintiff's proposed allegations related to the MVRLA and double billing would result in significant additional delay and undue prejudice to the Defendants.

At present, Plaintiff's causes of action include: (1) a claim against the Nissan Defendants under 15 U.S.C. § 1681s-2(b) for furnishing information to a credit reporting agency that they knew or had reason to know was inaccurate, (TAC, ECF No. 68, at 19–20; Mem. & Order, ECF No. 54, at 8 (describing Plaintiff's cause of action under § 1681s-2 and denying Defendants' motion to dismiss this cause of action from the second amended complaint)), and (2) common law fraud, specifically, fraud in the execution, against Defendant Gregoris, (TAC, ECF No. 68, at 20; Mem. & Order, ECF No. 54, at 20–22 (denying Defendant Gregoris's motion to dismiss this cause of action from the second amended complaint)).[7] Plaintiff's proposed new causes of action related to the MVRLA and double billing raise multiple new issues of law and fact that are distinct from the pending claims.

The Nissan Defendants are presently only defending one narrow question: "was there a violation of 15 U.S.C. § 1681s-2(b)?" (Nissan Resp. in Opp'n, ECF No. 106, at 2.) Plaintiff's allegations against all Defendants under the MVRLA do not appear to have any overlapping questions of law or fact with her allegations related to credit reporting or her active cause of action for fraud in the execution. Even if Plaintiff does not require any additional discovery related to her proposed claims, justice would require the Court to permit Defendants the opportunity to pursue additional discovery to explore questions of Plaintiff's standing, injury, and damages for her claims related to the

---

[7] Plaintiff sought to add a third cause of action under the Consumer Financial Protection Act in her third amended complaint, (TAC, ECF No. 68, at 21), which she later conceded did not provide a private right of action and which Judge Mauskopf dismissed, (Oct. 17, 2022 ECF Order).

MVRLA. The same is true and even more troubling as to Plaintiff's proposed claim related to her allegations of double billing. Plaintiff candidly admits that this claim is so delayed that her bank is unable to produce records that would show whether or not the double billing even occurred. (Proposed Am. Compl., ECF No. 103, 1st ¶ 44.) Under such circumstances, the Nissan Defendants would be unfairly prejudiced by their inability to seek documents in discovery that could confirm or disprove the claim.[8] For all of these reasons, Plaintiff's proposed new allegations related to these causes of action "would require the [Defendants] to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." *AEP Energy Servs. Gas Holding Co.*, 626 F.3d at 725; *see also Amusement Indus. v. Stern*, No. 07-CV-11586, 2014 WL 4460393, at *13 (S.D.N.Y. Sept. 10, 2014) ("Courts regularly deny motions to amend where the moving party seeks to add claims involving collateral matters, based on different factual allegations and distinct legal theories, from the claims already at issue in a case.").

This case has been pending for over six years, and discovery has been closed for over six months. (*See* Compl., ECF No. 1; Nov. 7, 2023 ECF Min. Entry & Order.) To grant Plaintiff's proposed amendment at this extremely late date would almost certainly result in the expenditure of significant additional resources and a substantial delay in

---

[8] For purposes of evaluating the futility of Plaintiff's motion to amend, the Court assumes that all allegations in the proposed amended complaint are true, as it must, and draws reasonable inferences in Plaintiff's favor. However, in evaluating possible prejudice, the Court notes that these allegations also suggest that the Nissan Defendants may have reversed the second payment — a possible defense that Defendants may be precluded from investigating because of the lack of available bank records *from approximately 11 years ago*. Given the age of the alleged double billing, and the lack of key bank records, the circumstances here underscore the undue prejudice that could flow from allowing the addition of the double-billing allegations as a standalone claim, as well as the importance of statutes of limitation.

the resolution of this case. *See Block*, 988 F.2d at 350. Even if Plaintiff's claims were not futile, the Court would respectfully recommend denial of leave to amend due to the age of this case and to avoid further undue delay and prejudice to Defendants.

## CONCLUSION

For all of the reasons discussed above, the Court finds that, even under the liberal spirit of Federal Rule of Civil Procedure 15(a), leave to amend should be denied due to futility, undue delay, and prejudice. The Court therefore respectfully recommends denying Plaintiff's motion for leave to amend in its entirety. In addition, for the reasons discussed herein, the Court respectfully recommends denying Plaintiff's related motion for a declaratory judgment on the question of whether the lease was void *ab initio* under New York law. (*See* Mot. for Declaratory J., ECF No. 112.)

\*    \*    \*    \*    \*

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Diane Gujarati at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation]

operates as a waiver of any further judicial review of the magistrate[ judge's] decision"

(quotation marks omitted)).

      **SO ORDERED.**

Dated:  Brooklyn, New York
       June 21, 2024

               *Taryn A. Merkl*
               TARYN A. MERKL
               UNITED STATES MAGISTRATE JUDGE