UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
BARBARA RUMAIN,

                Plaintiff,

    -against-

GREGORIS MOTORS, INC., NISSAN
NORTH AMERICA, INC., NISSAN
MOTOR ACCEPTANCE CORP., and
NISSAN INFINITI LT, INC.,

                Defendants.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
17-CV-7251 (DG) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiff Barbara Rumain, proceeding *pro se*, initiated this action over seven and a half years ago alleging, *inter alia*, New York state law claims for fraud and breach of contract related to a car lease transaction against Defendants Gregoris Motors, Inc. ("Gregoris"), Nissan North America, Inc., Nissan Motor Acceptance Corporation, and Nissan-Infinity LT (collectively, "Nissan").[1] (*See* Compl., ECF No. 1; Third Am. Compl. ("TAC"), ECF No. 68.) The parties settled during their third mediation session on November 7, 2024. (Letter, ECF No. 128; *see also* Status Report, ECF No. 117.) Defendants' motion to enforce the settlement reached at mediation is now before the Court for a report and recommendation. (*See* Mot. to Enforce Settl. ("Mot."), ECF No. 142.) For the reasons set forth below, the Court respectfully recommends finding that the settlement the parties reached at mediation is final and enforceable, that judgment

---

[1] Nissan-Infiniti LT was added as a Defendant in the second and third amended complaints. (*See* Second Am. Compl. ("SAC"), ECF No. 24; TAC, ECF No. 68.)

for Plaintiff should be entered in the amount of $30,500 as detailed below, and that the Clerk of Court should be directed to close this case.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court assumes general familiarity with the substance and history of the case and includes only the background relevant to the instant motion. In brief, Plaintiff's claims derive from a car lease transaction. Plaintiff alleged that in late 2011, she inquired about a 24-month car lease, entered into a 24-month car lease, and then later discovered that the lease term was actually 39 months. (TAC, ECF No. 68, ¶¶ 1–2, 11.) Plaintiff stated that she was not permitted to return the car after 24 months without paying early termination fees. (*Id.* ¶ 17.) On February 6, 2015, about one month before the end of the lease term, the car was repossessed because Plaintiff was two to three months behind on the lease payments. (*Id.* ¶ 31.) Plaintiff alleged that in 2016, her TransUnion credit report noted an outstanding balance on the lease of over $4,000 and reflected a "charged off" loan status. (*Id.* ¶ 46.) Plaintiff alleged that two collection agencies pursued the debt on Defendant Nissan Motor Acceptance Corporation's behalf. (*Id.* ¶ 55.)

Plaintiff filed this action on December 13, 2017. (Compl., ECF No. 1.) The initially named Defendants indicated their intent to move to dismiss. (Mots. for Pre-Mot. Conference, ECF Nos. 4, 7.) Plaintiff filed a first amended complaint on April 6, 2018. (Am. Compl., ECF No. 10.) At an initial conference held by Magistrate Judge Steven M. Gold, Judge Gold indicated he would "recommend dismissal for lack of subject matter jurisdiction unless any party files a letter or memorandum of law by May 9 indicating why it would not be proper to do so." (Min. Entry, ECF No. 14.) On May 7, 2018, Plaintiff filed a motion to amend the complaint, which was granted on June 11, 2018. (Mot. to Amend, ECF No. 16; Order, ECF No. 23.) Plaintiff's second amended complaint was filed on June 25, 2018. (Second Am. Compl. ("SAC"), ECF No. 24.) On September

2

28, 2021, the Honorable Roslynn R. Mauskopf granted Defendants' motions to dismiss the SAC in part, dismissing the majority of Plaintiff's claims under the Fair Credit Reporting Act and her claim alleging breach of contract. (Mots. to Dismiss, ECF Nos. 34, 38.) *See Rumain v. Gregoris Motors, Inc.*, No. 17-CV-7251 (RRM) (TAM), 2021 WL 9553573, at *12 (E.D.N.Y. Sept. 28, 2021). Defendants answered the remaining claims in the SAC on October 29, 2021, and November 2, 2021. (Answers, ECF Nos. 55, 56.)

Plaintiff filed a third amended complaint on August 31, 2022, in which she reiterated her § 1681s-2(b) claim against Nissan and her common law fraud claim against Gregoris. (TAC, ECF No. 68, ¶¶ 56–60.) She also sought to add a third claim, alleging a violation of the Consumer Financial Protection Act of 2010. (*Id.* ¶¶ 61–70.) Following a pre-motion conference letter anticipating a motion to dismiss, Judge Mauskopf dismissed the third cause of action, Defendant Gregoris filed an answer on September 14, 2022, and the Nissan Defendants filed an answer on December 7, 2022. (Mot. for Pre-Mot. Conference, ECF No. 69; Oct. 17, 2022 ECF Order; Answers, ECF Nos. 70, 77.) On May 19, 2024, Plaintiff filed a motion to file a fourth amended complaint. (Mot. to Amend., ECF No. 101.) On June 21, 2024, this Court issued a report and recommendation, recommending denial of the motion, which the Honorable Diane Gujarati adopted. *See Rumain v. Gregoris Motors, Inc.*, No. 17-CV-7251 (DG) (TAM), 2024 WL 4250251 (E.D.N.Y. June 21, 2024), *report and recommendation adopted*, Aug. 7, 2024 ECF Order Adopting R. & R.

### I. Discovery, Settlement, and Failed Attempts at Mediation

The Court first ordered a discovery schedule on June 28, 2022. (June 28, 2022 ECF Order.) The Court held a pre-settlement status conference on August 30, 2022, and directed Plaintiff to make a settlement demand "as soon as possible, including a damages calculation, to facilitate settlement discussions." (Aug. 30, 2022 ECF Min.

3

Entry & Order.) The Court held a status conference on January 12, 2023, where it reiterated its direction to Plaintiff to provide a settlement demand and damages calculation and extended the discovery schedule, setting the close of fact discovery as March 3, 2023. (Jan. 12, 2023 ECF Min. Entry & Order.) On May 4, 2023, the Court held another status conference to discuss outstanding discovery and directed the parties to certify the close of fact discovery by May 18, 2023. (May 4, 2023 ECF Min. Entry & Order.) Following multiple status reports and status conferences discussing outstanding discovery issues, the Court found that discovery was closed on November 7, 2023. (*See* Joint Status Report, ECF No. 93; Corrected Joint Status Report, ECF No. 94; July 26, 2023 ECF Min. Entry & Order; Joint Status Report, ECF No. 96; Joint Status Report, ECF No. 97; Sept. 19, 2023 ECF Min. Entry & Order; Nov. 7, 2023 ECF Min. Entry & Order.)

On November 7, 2023, the Court referred the case to mediation for the first time. (Nov. 7, 2023 ECF Min. Entry & Order.) The first mediation was unsuccessful. (*See* Letter from Barbara Rumain, ECF No. 115.) At Plaintiff's request, the parties attended a second mediation session, but were once again unable to reach an agreement. (*Id.*; Feb. 6, 2024 ECF Order; Mar. 18, 2024 Report of Mediation Unsettled; Status Report, ECF No. 117.)

Following the denial of Plaintiff's motion to file the fourth amended complaint, Plaintiff filed a letter indicating that she would accept a settlement offer, but in the weeks that followed, the parties failed to reach an agreement. (Letter, ECF No. 124; Aug. 13, 2024 ECF Order; Status Report, ECF No. 126.)

**II. Final Mediation, Settlement, and its Aftermath**

On September 5, 2024, the Court again referred the case to mediation. (Sept. 5, 2024 ECF Order.) On December 10, 2024, the parties filed a joint letter indicating that

4

they had reached an agreement in principle. (Status Report, ECF No. 128.) The joint letter, which was filed on behalf of all parties, stated in relevant part:

> The parties participated in a mediation session on November 7, 2024, which resulted in a settlement of this matter. A Settlement Agreement and Release is being circulated among the parties and is expected to be signed shortly. A Stipulation of Dismissal with Prejudice will be filed with the Court. The parties would like to thank Your Honor for your assistance in helping bring this matter to a conclusion.

(*Id*.) The next day, the Court directed the parties to file a stipulation of dismissal by January 24, 2025. (Dec. 11, 2024 ECF Order.)

On December 16, 2024, Plaintiff and a representative of Gregoris signed the settlement agreement. (*See* Written Settlement Agreement, ECF No. 142, at ECF p. 22; *id.* at ECF pp. 33–38 (email from Plaintiff sharing settlement agreement with her signature).) Later that day, Plaintiff received an email from counsel for Nissan's office, asking her "to fill out a form for [Defendants] to give [Plaintiff] a 1099" tax form. (Tr., ECF No. 138, at 10:15–11:2.) Upon receipt of that email, about six hours after signing the settlement agreement and before all Defendants had countersigned the agreement, Plaintiff emailed counsel for Nissan to withdraw her signature. (*Id*.; Letter, ECF No. 130.)

Under the terms of the written settlement agreement that was circulated (and ultimately signed by all parties, although Plaintiff disputes whether that was binding as discussed herein), both Defendants agreed to pay Plaintiff "on or before January 10, 2025," but not before calendar year 2025. (*See* Written Settlement Agreement, ECF No. 142, at ECF p. 18, §§ 2, 3.) In addition, the written settlement agreement included an integration (or zipper) clause, expressly providing that: "This Agreement contains the entire agreement between the Parties with regard to the matters set forth herein . . . ." (*Id.* at ECF p. 19, § 10.)

5

On January 27, 2025, Defendants filed a letter motion requesting a conference to discuss a motion to enforce the settlement agreement. (Mot. for Pre-Mot. Conference, ECF No. 129.) The Court scheduled and, after receiving a series of letters from Plaintiff, held a conference. (Jan. 28, 2025 ECF Scheduling Order; Letter, ECF No. 130; Letter, ECF No. 132; Feb. 27, 2025 ECF Min. Entry & Order.) At the conference, Plaintiff "indicated that she was under the impression that she would not be issued a 1099 in connection with the settlement payment," but Defendants countered that the settlement agreement did not contain language addressing tax treatment, and noted that they had provided payment to Plaintiff, who had not cashed the checks as of that time. (Feb. 27, 2025 ECF Min. Entry & Order.) The Court encouraged the parties to discuss and resolve this dispute, but, in the absence of a resolution, directed a briefing schedule for the anticipated motion to enforce settlement. (*Id.*) Since the February conference, Plaintiff cashed one of the two settlement checks she received, the check from Nissan; she represents that she endorsed the check as being cashed "[u]nder protest and without prejudice and with reservation of all rights," in order to preserve her legal rights and objections. (Response, ECF No. 142-1, at 4.)

On May 2, 2025, the parties filed the fully briefed motion. (Mot., ECF No. 142; Response, ECF No. 142-1; Reply, ECF No. 142-2.)[2] For the reasons set forth herein, the Court respectfully recommends finding that the parties' settlement comprises an

---

[2] Plaintiff filed several additional letters, styled as notices of motion, after the close of briefing, seeking a court order prohibiting Defendants from issuing a 1099 form. (*See* Not. of Mot. to Prevent Issuance of IRS Form 1099s, ECF No. 143; Corrected Not. of Mot. to Prevent Issuance of IRS Form 1099s, ECF No. 144.) For the reasons discussed *infra*, this Court respectfully recommends that this motion be denied.

6

enforceable contract, that judgment should be entered for Plaintiff in the amount of settlement, and that the Clerk of Court should be directed to close this case.

## DISCUSSION

### I. Legal Standards

"'It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law.'" *Murphy v. Inst. of Int'l Educ.*, 32 F.4th 146, 150 (2d Cir. 2022) (quoting *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)). "A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (per curiam). "Whether a binding agreement exists is a question of law." *Murphy*, 32 F.4th at 150. "The ultimate issue . . . 'is the intent of the parties: whether the parties intended to be bound, and if so, to what extent.'" *Vacold LLC v. Cerami*, 545 F.3d 114, 125 (2d Cir. 2008) (quoting *Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.*, 145 F.3d 543, 548–49 (2d Cir. 1998)). The courts' authority to enforce settlement agreements is both "essential to the efficient use of judicial resources, [and] also preserves the integrity of settlements as a meaningful way to resolve legal disputes." *Brown v. Nationscredit Com.*, No. 99-CV-592 (EBB), 2000 WL 888507, at *1 (D. Conn. June 23, 2000).

In New York, a contract is generally enforceable when there is "an offer, acceptance, consideration, mutual assent[,] and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (quotation marks omitted). To form a binding contract, the parties must agree on all essential terms, which are those terms that require negotiation. *See Mun. Consultants & Publishers, Inc. v. Town of Ramapo*, 47 N.Y.2d 144, 149 (1979) (essential terms are those that, once agreed upon, "there is nothing left for future settlement"); *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75–76 (2d Cir.

7

1984). There must be "a meeting of the minds" on the material terms for a court to enforce a settlement. *Raghavendra v. Trs. of Columbia Univ.*, 686 F. Supp. 2d 332, 340 (S.D.N.Y. 2010) (quotation marks omitted), *aff'd in relevant part, vacated and remanded on other grounds*, 434 F. App'x 31 (2d Cir. 2011). Once these terms have been agreed to, the parties are bound and must adhere to the agreement. *See id.* at 340–41. The party seeking to enforce a purported settlement agreement bears the burden of proving that a binding and enforceable agreement exists. *See Benicorp Ins. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006).

In *Murphy*, the Second Circuit compared two types of preliminary contracts that are recognized under New York law, observing that:

> The first (Type I) "occurs when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation." This kind of agreement is preliminary "only in the sense that the parties desire a more elaborate formalization of the agreement," which, although not necessary, is desirable. The second (Type II) "is one that expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated."

*Murphy*, 32 F.4th at 150 (citations omitted) (quoting *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491, 498 (S.D.N.Y. 1987)). Type I agreements are binding. *See Smith v. Home Depot U.S.A.*, No. 20-CV-4125 (JMA) (LGD), 2024 WL 1174288, at *7 (E.D.N.Y. Mar. 19, 2024), *appeal withdrawn*, 2025 WL 1178465 (2d Cir. Jan. 10, 2025). In the context of settlement agreements reached at mediation, the court in *Murphy* opined that:

> In all but the most unusual circumstances, mediation agreements that include express language indicating that the parties have reached agreement on all material terms are presumptively Type I agreements — unless the parties explicitly reserve the right not to be bound by the mediation agreement's terms until a final agreement is drafted and signed.

8

*Id.* at 153. In *Murphy*, the parties had all signed a written agreement at mediation that the plaintiff later sought to revoke; thus, the key question was whether the agreement was Type I or Type II. *Id.* at 150. By contrast, here, taking the arguments in the light most favorable to Plaintiff, Plaintiff raises questions about "whether the parties intended to be bound" at all. *Id.* at 151 (quotation marks omitted).

In evaluating whether parties to a settlement intended to be bound, whether their agreement is a Type I or Type II preliminary agreement, or whether that preliminary agreement is binding, courts in the Second Circuit use the four factors set out in *Winston v. Mediafare Entertainment Corporation*:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

777 F.2d 78, 80 (2d Cir. 1985); *see Murphy*, 32 F.4th at 151.

When an agreement is reduced to writing, "[i]t is a fundamental principle of contract law that agreements are interpreted in accordance with the parties' intent, and the best evidence of the parties' intent is what they expressed in their written contract." *Volt Elec. NYC Corp. v. A.M.E., Inc.*, 586 F. Supp. 3d 262, 276 (S.D.N.Y. 2022); *see Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 (2d Cir. 2013); *see also Balder v. Sarandon*, No. 22-CV-06401 (JLR) (SN), 2023 WL 9232957, at *6 (S.D.N.Y. Dec. 18, 2023). The Court notes that, of particular relevance here, "[t]he parties' intentions or characterization of settlement payments, standing alone, do not dictate the correct tax treatment of a settlement." *Guzman v. Prodelca Corp.*, No. 16-CV-2637 (AJP), 2016 WL 4371631, at *1 (S.D.N.Y. Aug. 16, 2016) (citing *Gerstenbluth v. Credit Suisse Sec. (USA) LLC,* 728 F.3d 139, 144 (2d Cir. 2013)).

## II. Analysis

Here, it is undisputed that the parties represented to the Court that a settlement was reached at mediation, that the settlement was reduced to writing after mediation, and Plaintiff signed the written agreement. (*See generally* Mot., ECF No. 142; Response, ECF No. 142-1.) Nevertheless, Plaintiff objects to the settlement on three grounds. First, she argues that Defendants failed to disclose the tax implications of the settlement, which she characterizes as a "material misrepresentation" that voids the settlement.[3] (Response, ECF No. 142-1, at 1.) Second, she argues that there was no meeting of the minds, because she did not understand the taxability of the settlement, which she describes as a material term. (*Id.*) Third, she argues that the settlement was never fully executed because she withdrew her signature before all Defendants countersigned. (*Id.* at 2.) Defendants argue that the written settlement agreement contained all relevant terms and is enforceable, that objection to the tax treatment of a settlement payment is not a legitimate reason to back out of an agreed-upon settlement, and that any dispute

---

[3] Plaintiff specifically argues that "Plaintiff signed the agreement under the express understanding that no 1099 would be issued." (Response, ECF No. 142-1, at 1.) The Court notes that it is somewhat unclear where her "express understanding" came from, although she suggests it was based on her conversations with her *pro bono* mediation advocate. (*Id.* at 2.) However, she also acknowledges that she understood that Defendants "were not taking a position regarding the taxability of the settlement funds." (*Id.* (emphasis omitted); *see also* Tr., ECF No. 138, at 5:11–22.) Ms. Rumain's arguments on these points appear to conflate the question of whether a 1099 must issue with taxability. As discussed below, the mere issuance of a 1099 does not render the settlement payment taxable. Moreover, the Court observes that parties could *not* agree to *not* issue tax documents if they are otherwise required to do so by law; such an agreement would be readily voidable as contrary to law and public policy. *See, e.g., Gray v. Collection Info. Bureau, Inc.*, 823 F. Supp. 2d 1296, 1297 (S.D. Fl. 2011) (finding settlement agreement unenforceable where party refused to submit taxpayer identification number necessary to issue form 1099); *In re Republic Airways Holdings Inc.*, 598 B.R. 118, 146–47 (Bankr. S.D.N.Y. 2019) (collecting cases discussing the principle that contracts that violate law or public policy are unenforceable).

10

about the taxability of settlement is separate from the enforceability of the settlement in the first instance. (Mot., ECF No. 142, at 9–15.)

For the reasons discussed below, the Court first finds that the parties reached a Type I agreement at mediation, before any writing was formalized. This situation is akin to that in *Smith v. Home Depot U.S.A., Inc.*, where the court found that the parties had reached an enforceable Type I settlement agreement based on key financial terms, where Plaintiff reviewed and did not object to, but also did not sign, the formalized written settlement agreement before objecting. 2024 WL 1174288, at *2–4, *7–11. Here, three of the four *Winston* factors weigh in favor of finding that an enforceable settlement agreement existed after the mediation.

### A. *Winston* Factor 1: No Express Reservation of Rights Not to be Bound

Starting with the first *Winston* factor, which is "frequently [considered] the most important," *Brown v. Cara*, 420 F.3d 148, 154 (2d Cir. 2005), Plaintiff does not provide any evidence to establish or argue that she reserved the right to withdraw her agreement to the settlement in the absence of a writing. (*See, e.g.*, Response, ECF No. 142-1.)[4] The following facts clearly illustrate the parties' intent that the agreement reached at mediation was final: (1) all parties agreed at the mediation to a full settlement of the claims for $30,500, and several days later, agreed that Defendants' payments would be due between January 1, 2025, and January 10, 2025, (Mot., ECF No. 142, at 3; Written Settlement Agreement, ECF No. 142, at ECF p. 18 (detailing settlement amount); Tr., ECF No. 138, at 11:21–23); (2) all parties informed the Court that the mediation successfully resulted in a settlement agreement, (Status Report, ECF No. 128);

---

[4] Plaintiff's argument that a valid settlement was not reached is not relevant to this portion of the *Winston* analysis but is discussed further below.

11

(3) after the agreement was reduced to writing, Defendants issued settlement checks to Plaintiff in satisfaction of the agreement,[5] (Mot., ECF No. 142, at 4; Letter, ECF No. 130; Tr., ECF No. 138, at 6:5); and (4) Plaintiff confirmed on the record that she agreed to settle the case for approximately $30,000 at mediation, (Tr., ECF No. 138, at 11:21–25). *Cf. Murphy*, 32 F.4th at 151 (analyzing a fully executed written agreement).

As to the terms of the settlement that was reached, Plaintiff's arguments squarely acknowledge that the parties came to no agreement about the taxability of the settlement during mediation. (*See* Response, ECF No. 142-1, at 1–2 (asserting that "Defendants had stated they were not taking a position regarding the taxability of the settlement funds" and noting that there was an "absence of a mutual understanding on this essential point" regarding issuance of the 1099 form) (emphasis omitted).) Significantly, Plaintiff does not contend, and there is no evidence to suggest, that Plaintiff expressly reserved the right not to be bound in the absence of a final writing, much less that she reserved acceptance until the question of a 1099's issuance was memorialized in writing. The absence of an express reservation is a strong indication of a party's intent to be bound by a preliminary agreement. *See Singer v. Xipto Inc.*, 852 F.

---

[5] While neither party's papers explicitly state the amount of the Gregoris check, the parties' filings imply that the settlement checks provided to Plaintiff were in the amounts specified by the parties' written agreement. (*See, e.g.*, Tr., ECF No. 138, at 6:5 ("So we issued our payments. She has them."); Response, ECF No. 142-1, at 4 (describing two checks, one from Nissan and one from Gregoris, and explaining why she cashed the Nissan check, without raising any question about the amount of money provided for in the checks).)

12

Supp. 2d 416, 424 (S.D.N.Y. 2012); *Winston*, 777 F.2d at 80.[6] In short, the record shows that a settlement was reached at mediation, before the settlement was reduced to writing, and no party reserved the right to change their mind before signing a written document. The first *Winston* factor thus favors enforcing the settlement, as do the third, and fourth *Winston* factors, as discussed below.

### B. *Winston* Factor 2: Partial Performance

The second factor, partial performance of the agreement, favors neither party. "Partial performance favors enforcement when 'one party has partially performed, and that performance *has been accepted* by the party disclaiming the existence of an agreement.'" *Acun v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 852 F. App'x 552, 554 (2d Cir. 2021) (summary order) (emphasis added) (quoting *Ciaramella v. Reader's Dig. Ass'n, Inc.*, 131 F.3d 320, 325 (2d Cir. 1997)); *see also R.G. Grp., Inc.*, 751 F.2d at 75–76. Here, the Defendants provided payment in the full amount of the settlement. (Letter, ECF No. 130 (acknowledging receipt of the settlement checks); Mot., ECF No. 142, at 4; *see* Response, ECF No. 142-1, at 4 (discussing Plaintiff's reasoning for cashing one of the settlement checks and noting that she has not cashed the check from Gregoris).) The issuance of these payments was clearly an attempt to fulfill the terms of the settlement. *See Ciaramella*, 131 F.3d at 325 (observing that payment of settlement would suffice as partial performance). However, Plaintiff — the party disclaiming the existence of an

---

[6] The Court notes that, under *Murphy*, a determination as to whether Plaintiff intended to be bound by the settlement agreement does not turn on whether every party had physically signed the agreement before she informed Defendants that she had changed her mind. *See* 32 F. 4th at 151; *accord Smith*, 2024 WL 1174288, at *7 ("Type I agreements 'render the parties fully bound to carry out the terms of the agreement even if the formal instrument is never executed.'" (internal quotation marks omitted) (quoting *Vacold LLC v. Cerami*, 545 F.3d 114, 128 (2d Cir. 2008)). But the fact that Defendants sent Plaintiff settlement checks confirms that Defendants understood there to be an agreement and that they intended to be bound thereby. *See Winston*, 777 F.2d at 80.

13

agreement here — has not accepted Defendants' performance: she has not cashed Gregoris's check, and although she cashed Nissan's check, she did so "under protest" on the advice of counsel to "preserve access to the funds." (Response, ECF No. 142-1, at ECF p. 4 (emphasis omitted).) At Plaintiff's urging (*see id.*), the Court does not take this as evidence of Plaintiff's intent to be bound to the terms of the written settlement agreement, though the Court notes that under generally accepted principles of contract law, cashing a check amounts to acceptance of performance. *Cf. Carrion v. United Airlines, Inc.*, No. 13-CV-4875 (NGG) (RER), 2014 WL 3756385, at *3 (E.D.N.Y. July 30, 2014) ("In some circumstances, a check endorsed under protest will not constitute accord and satisfaction."). Accordingly, while Defendants have attempted to perform, because Plaintiff has not fully accepted Defendants' performance, the second *Winston* factor favors neither party. This finding notwithstanding, the second factor is the least important of the four. *See Xie v. Caruso, Spillane, Leighton, Contrastano, Savino & Mollar, P.C.*, 632 F. Supp. 3d 262, 268 (S.D.N.Y. 2022).

### C. *Winston* Factor 3: Whether All Terms Were Agreed Upon

The third *Winston* factor has been met because, notwithstanding her arguments regarding the lack of agreement concerning the issuance of a 1099, Plaintiff has failed to establish that a negotiable, essential term was expressly left open to negotiation post-mediation. When informing the Court of the settlement, the parties indicated that settlement had been reached at mediation, and a settlement agreement and release was being "circulated among the parties" with the expectation that it would be signed "shortly." (*See* Status Report, ECF No. 128.) Regardless, Plaintiff has argued that the settlement was invalid, because she was not aware that a 1099 form would be issued and thus there was no meeting of the minds. (Response, ECF No. 142-1, at 1–2.) Even

14

assuming for the sake of argument that Plaintiff reasonably misunderstood whether a 1099 would issue or the potential tax treatment of the settlement, Plaintiff acknowledges that Defendants made no representations as to tax treatment during or after mediation. (*Id.*) Plaintiff also does not argue or present any evidence that the question of whether a 1099 would issue was reserved for further negotiation. (*See* Letter, ECF No. 130; Response, ECF No. 142-1.)

On the issue of the 1099 or the ultimate taxability of settlement, the Court notes that neither the parties nor the Court are at liberty to dictate how the settlement payment is taxed, so taxability could not have been a negotiable term during mediation. *See Guzman*, 2016 WL 4371631, at *1. (*See, e.g.*, Tr., ECF No. 138, at 4:12–18 (the Court observing at the pre-motion conference that "the law is the law with regard to how tax treatment is afforded settlement agreements. [Defense counsel] are not at liberty to change the law. [The Court is] not at liberty to change the law."); *id*. at 6:11–13 (defense counsel observing: "We do not dictate the taxability of those funds. We can't. That's between her and the IRS. My client issuing [a 1099] is merely following disclosure obligations.").)[7]

For these reasons, the Court finds that no party has established that a material term was missing from the agreement the parties reached at mediation, and therefore

---

[7] Defendants' motion to enforce settlement likewise posits that they are required to report the payments to the IRS, but that the reporting does not dictate ultimate tax treatment. (Mot., ECF No. 142, at 5 (citing 26 U.S.C. § 6041 and 26 C.F.R. § 1.6041-1(f) for the proposition that "[f]ederal tax regulations require that a company issue a 1099 form with every settlement payment over $600").) *See also, e.g.*, *Gray*, 823 F. Supp. 2d at 1297 (observing that federal tax regulations require companies to issue a 1099 form with every settlement payment over $600 and denying a motion to enforce settlement by a plaintiff who sought to enforce settlement without providing information sufficient for the defendant to issue a 1099, because such enforcement would force the defendant to violate the law).

15

the third *Winston* factor favors finding that the agreement was binding. *Cf. Spheyr, Inc. v. Brooklyn Minds Psychiatry P.C.*, No. 22-CV-08427 (ER), 2024 WL 3085060, at *6–7 (S.D.N.Y. June 20, 2024) (finding that, when the settlement amount and payment period were confirmed, all material terms of settlement had been resolved, notwithstanding the existence of an open question that was not mentioned in the offer), *appeal withdrawn*, 2024 WL 5330676 (2d Cir. Oct. 17, 2024).

### D. *Winston* Factor 4: Whether Agreement Would be Reduced to Writing

The fourth and final *Winston* factor, whether this agreement would typically be memorialized in writing, also supports a finding for Defendants. A relatively simple contractual settlement by which the parties have "agreed to terminate the litigation and settle for a modest amount" is often not memorialized in writing. *Geneva Lab'ys Ltd. v. Nike W. African Import & Export, Inc.*, No. 19-CV-4419 (EK) (RER), 2022 WL 673257, at *10 (E.D.N.Y. Mar. 7, 2022). This settlement agreement, which involved payment to Plaintiff in exchange for dismissal of her claims with prejudice, arguably falls into this category, and thus need not have been memorialized in writing at all. But here, the agreement *was* memorialized in writing and Plaintiff signed the agreement, as discussed above, prior to finding out that Defendants believe that the law requires that a 1099 be issued. That the settlement agreement was, in fact, memorialized in writing provides further support for the conclusion that the settlement reached at mediation was final. Accordingly, the fourth *Winston* factor further supports the conclusion that the parties' settlement agreement, reached through mediation, was a binding settlement.

In the interest of completeness, the Court turns briefly to the written agreement. Plaintiff states that she did not know that a 1099 form would be issued when she agreed to settle at mediation, and that she withdrew her signature immediately upon receiving the request for information regarding the 1099 form, before the written agreement was

16

fully executed. (Letter, ECF No. 130, at ECF p. 2; Response, ECF No. 142-1, at 1–2.) As discussed *supra* note 6, the Court finds that, under *Murphy*, the physical execution of the agreement is irrelevant to the core question of whether the parties' agreement at mediation constitutes an enforceable settlement. *See* 32 F. 4th at 151 (applying the *Winston* factors to a fully executed agreement).

Even assuming for the sake of argument that the written agreement was never fully executed, the Court considers the contents of the written agreement, which Plaintiff did initially sign, as further evidence of the parties' intent. The written agreement contains no reference to tax treatment of the settlement or the issuance of a 1099, notwithstanding the very specific language regarding the timing of when the payments should be made.[8] (Written Settlement Agreement, ECF No. 142, at ECF pp. 17–23.) The Court finds that this conspicuous absence adds support to the conclusion that Plaintiff agreed to settle without a mutual understanding as to whether tax documents would issue to disclose to the IRS the settlement payments. Moreover, given the settlement agreement's straightforward and unambiguous terms, extrinsic evidence has no role to play in interpreting the parties' written agreement. *See Gary Friedrich Enters., LLC*, 716 F.3d at 313–14 (observing that "the contract itself" is the best evidence of intent and that extrinsic evidence may only be considered if the terms of the contract are ambiguous); *Volt Elec. NYC Corp.*, 586 F. Supp. 3d at 276 (observing that an

---

[8] As noted above, the parties cannot negotiate the tax treatment of settlement payments. *Guzman v. Prodelca Corp.*, No. 16-CV-2637 (AJP), 2016 WL 4371631, at *1 (S.D.N.Y. Aug. 16, 2016) ("The parties' intentions or characterization of settlement payments, standing alone, do not dictate the correct tax treatment of a settlement." (citing *Gerstenbluth v. Credit Suisse Sec. (USA) LLC*, 728 F.3d 139, 144 (2d Cir. 2013))). Accordingly, the Court respectfully recommends that Plaintiff's motion for an order preventing the issuance of a 1099 form should be denied. (*See* Nots. of Mot., ECF Nos. 143, 144.)

17

unambiguous contract is enforced according to its plain meaning); *Schron v. Troutman Sanders,* 20 N.Y.3d 430, 436 (2013) ("As a general rule, extrinsic evidence is inadmissible to alter or add a provision to a written agreement."). Accordingly, the Court finds that the written settlement agreement further supports the conclusion that Plaintiff should be bound by the settlement agreed to by the parties here. *See Raghavendra*, 686 F. Supp. 2d at 340.

Finally, the Court notes that it is well established in the Second Circuit that "[w]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994). Here, after seven years of litigation, Plaintiff made a choice to settle and even went so far as to strategically time when she would receive the settlement payments. Her desire that no tax forms be issued does not appear to have been expressed to Defendants during the settlement negotiations, and there is no evidence in the record that she predicated her acceptance of the parties' agreement on this issue being resolved. Under these circumstances, the agreement the parties' reached at mediation was binding and should be enforced. Having made the decision to resolve this long-fought litigation, Plaintiff "must live with [her] choice." *Id.* at 760.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends granting Defendants' motion to enforce settlement (ECF No. 142) and directing the Clerk of Court to enter judgment in favor of Plaintiff in the amount of $30,500, comprising

$20,500 payable by Gregoris, and $10,000 payable by Nissan.[9] (*See* Written Settlement Agreement, ECF No. 142, at ECF p. 18, §§ 2, 3.) The Court further recommends that Plaintiff's motion to prevent issuance of an IRS form 1099 should be denied, and that the Clerk of Court be directed to close this case, with prejudice.

*   *   *   *   *

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Diane Gujarati at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated: Brooklyn, New York
       September 22, 2025

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

---

[9] As previously discussed, Defendants have already provided settlement checks to Plaintiff, one of which was already cashed (the payment from Nissan). (*See* Response, ECF No. 142-1, at 4.)